**UNITED STATES of America**

v.

**Anthony J. PAOLELLO**

**Anthony J. Paolello, Appellant.**

**No. 91–3282.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 1, 1991.

Decided Dec. 4, 1991.

* As to panel rehearing only.

Thomas S. White (argued), Karen M. Sirianni, Asst. Federal Public Defender, Pittsburgh, Pa., for appellant.

Thomas W. Corbett, Jr., U.S. Atty., Paul J. Brysh, Constance M. Bowden argued, Pittsburgh, Pa., for appellee.

Before GREENBERG, ALITO and ROSENN, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

Anthony Paolello was convicted at a jury trial for a single count of violation of 18 U.S.C. § 922(g)(1) as he was a convicted felon in possession of a firearm. He timely appeals from a judgment of conviction and sentence entered on April 29, 1991, sentencing him to a 27–month custodial term to be followed by a three-year term of supervised release. We have jurisdiction under 28 U.S.C. § 1291.[1] While the indictment also recited that he had violated 18 U.S.C. § 924(e)(1), and Paolello has an extensive criminal record, the government does not contend that he was subject to the mandatory sentence provided in that section.

## I. FACTS AND PROCEDURE

Inasmuch as Paolello stipulated at trial that he was a convicted felon subject to the firearms interdiction in 18 U.S.C.

§ 922(g)(1), we will confine our description of the facts to those immediately surrounding this offense. On October 6, 1989, officers Joseph Kress and Robert Liebel of the Bureau of Police of the City of Erie, Pennsylvania, were on patrol in Erie. According to Kress, the government's principal witness, at approximately 1:30 a.m., they observed a broken-down tractor-trailer truck in the vicinity of 12th and Parade Streets. They stopped their car next to the truck to render assistance and, while engaged in conversation with the truck driver, heard what they believed to be a gunshot.

The officers then exited their vehicle and ran around the front of the truck, where Kress saw two persons fighting on the sidewalk in front of Al's Tavern. Kress noticed a group of people watching the fight, and heard someone yell "he's got a gun," and point in the direction of Paolello, who was also watching the fight. Kress then observed that Paolello had something in his hand, but when Kress looked toward Paolello, Paolello put that hand into his coat pocket.

Kress testified that he then saw Paolello turn and run down an alley. Kress yelled "freeze, police," and drew his weapon, but Paolello continued to run down the alley and at that time Kress observed that Paolello had a pistol in his right hand. Paolello stopped and turned toward Kress but when he saw that Kress had drawn his gun, Paolello threw his weapon to the ground. Kress again yelled "freeze, police," but Paolello ran on.

Kress retrieved the firearm that Paolello had discarded. It had a round chambered in its barrel and its hammer was back, an indication that the gun had been discharged. Eventually, Liebel apprehended Paolello. The officers then found a spent cartridge near the telephone pole on the north side of Al's Tavern, close to where Paolello had first been standing. No scientific tests were performed to determine whether Paolello had recently discharged the weapon. However, various experts called by the government testified that the

---

1. We also have jurisdiction under 18 U.S.C. § 3742(a) but we do not reach the sentencing issue raised.

spent cartridge had been fired from the weapon.

In his defense, Paolello called his stepson, Tyrone Monsey Williams, who testified that, on the evening of October 5, 1989, he and Paolello went to Al's Tavern because Williams wanted to meet a friend there. While in Al's Tavern, Paolello got into an argument with a man. Paolello then left the tavern, and the man with whom Paolello had argued followed him. Williams then exited the bar and witnessed Paolello and the man arguing. Soon a crowd had amassed outside the bar and when Williams turned his head, he was punched in the face. Though Williams was groggy after he was hit, he heard a gunshot and saw his stepfather fighting with the man. Williams testified that he thought they were holding something but could not discern what it was. Williams then saw the officers exit their vehicle but by then the wrestling between Paolello and the man had already taken place.

Paolello testified in his defense. He said that while in Al's a man asked him if he would buy him a drink. Paolello said that he was going to leave and walked toward the doorway but the man followed him as he walked out, demanding that Paolello buy him a drink. Paolello testified that Williams also followed him and left the bar and that once outside Williams was hit by the man. The man then "put his hand in the air with a gun and shot it off one time." In response, Paolello grabbed the man's hand because he believed that the man was aiming the gun at Williams, and the gun fell to the ground.

Paolello testified that he and the man struggled for the gun, but Paolello seized it and ran. As he was running, he heard someone yell "stop," and he turned around and dropped the gun. After Liebel apprehended him, he told Liebel that "that wasn't my gun; it was this other guy's" and "he's the one that had it," but the officers did not arrest the other man. Paolello further testified that he grabbed the gun because he "wasn't going to leave it there for him to shoot me with it. That's what I think he was trying to do, get the gun again because we were both scuffling after it."

On February 22, 1991, the district court held a charge conference at which counsel for Paolello requested that the court instruct the jury with regard to Paolello's justification theory of defense, as there was no question that in a physical sense he had possession of the weapon. The court refused this request and instead instructed the jury that "knowing" possession of a firearm does not include possession for an "innocent" reason. After Paolello's conviction and sentencing he appealed.

## II. DISCUSSION

### a. *Standard of Review*

■ On this appeal Paolello contends that the district court erred in refusing to charge the jury on his justification defense. Accordingly, we will review the record to determine whether there was evidence presented to support the theory of justification and we will further make a plenary legal determination of whether justification could have been a defense to the indictment. *See United States v. Bifield*, 702 F.2d 342, 346 (2d Cir.), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983); *United States v. Tsinnijinnie*, 601 F.2d 1035, 1040 (9th Cir.1979), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1657, 64 L.Ed.2d 242 (1980); *United States v. Garner*, 529 F.2d 962, 970 (6th Cir.), *cert. denied*, 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 124 (1976).

Inasmuch as we conclude that the evidence could have supported a not guilty verdict on the justification theory and that the theory was sound as a matter of law, we will examine the district court's instructions as a whole to assess whether they adequately presented the justification theory to the jury. In this regard "[i]n reviewing instructions to the jury, we [will] not isolate particular language but [will] examine it in the context of the entire charge." *United States v. Turley*, 891 F.2d 57, 62 (3d Cir.1989); *United States v. Messerlian*, 832 F.2d 778, 789 (3d Cir.1987), *cert. denied*, 485 U.S. 988, 108 S.Ct. 1291, 99 L.Ed.2d 501 (1988).

### b. The Law on Justification

Those courts of appeals that have considered a justification defense to a felon in possession of a firearm charge have adopted a four-part test to determine whether such a defense is available to a particular defendant. This approach requires a defendant to establish that:

(1) he was under unlawful and present threat of death or serious bodily injury;

(2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;

(3) he had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and

(4) there is a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*United States v. Crittendon*, 883 F.2d 326, 330 (4th Cir.1989). *Accord, United States v. Lemon*, 824 F.2d 763, 765 (9th Cir.1987); *United States v. Harper*, 802 F.2d 115, 117 (5th Cir.1986); *United States v. Wheeler*, 800 F.2d 100, 107 (7th Cir.1986).

However, in *United States v. One 107.9 Acre Parcel of Land*, 898 F.2d 396 (3d Cir.1990), an *in rem* forfeiture action, we applied what may possibly be a more lenient approach, requiring that the defendant prove only three elements to satisfy the defense of "duress." While the defenses of justification and duress were at one time distinct as duress excused criminal actions performed under an unlawful threat of imminent death or serious bodily injury caused by human forces whereas justification excused criminal conduct in response to a threat of death or serious bodily harm caused by natural forces, "[m]odern cases have tended to blur the distinction between duress and necessity." *United States v. Bailey*, 444 U.S. 394, 410, 100 S.Ct. 624, 634, 62 L.Ed.2d 575 (1980). *See also* 1 L. Sand et al., Modern Federal Jury Instructions ¶ 8.06, 8–22 (1991) (treating duress and justification the same). Thus, our opinion in *One 107.9 Acre Parcel of Land*, though not in a criminal case, is useful here.

In that case the government sought to recover land owned by the defendants, the Timchacks, and used to cultivate marijuana. The district court granted the government's summary judgment motion and the Timchacks appealed. Mrs. Timchack argued that, although she had been aware of her husband's illegal use of the land, she had not properly consented to that use and thus under the applicable statute her interest should not have been forfeited. She further argued that any consent she had given to her husband was the product of duress. We agreed that the defense of duress would negate consent, and held that, to make out this defense, Mrs. Timchack was required to prove three elements which we adopted from "a criminal law context:" (1) an immediate threat of death or serious bodily injury; (2) a well-grounded fear that the threat will be carried out; and (3) no reasonable opportunity to escape the threatened harm. 898 F.2d at 399. *See also United States v. Santos*, 932 F.2d 244, 249 (3d Cir.1991). We further indicated that we would "assume that a showing of duress would require less demanding proof in a civil [than a criminal] context." 898 F.2d at 399. Inasmuch as Mrs. Timchack presented no proof that she was faced with an immediate threat of serious bodily harm and thus was not compelled to consent to the unlawful use of the property, we held that the defense of duress was unavailable and thus we affirmed the grant of summary judgment.

While our opinion in *One 107.9 Acre Parcel of Land* may seem somewhat less restrictive than the four-part justification defense, our duress test embodies the same fundamental principle: "if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm' the defenses will fail." *United States v. Bailey*, 444 U.S. at 410, 100 S.Ct. at 635, *quoting* W. LaFave & A. Scott, Handbook on Criminal Law 379 (1972). Thus, we think that the justification defense requires in a criminal case that there be a "direct causal relationship between the criminal action and the avoidance of the threatened harm," the fourth element in the four-part test adopted by other courts of appeals.

██ We also think that, at least in a criminal case, a justification defense is dependent upon the defendant not having recklessly placed himself in a situation in which he would be forced to engage in criminal conduct. Of course, there is no indication that Paolello was reckless. While the government suggests that he was at fault because he went to a bar "known as a place where 'bad' people hang out in the early morning hours of the day" and that he left the bar even though he had reason to believe there would be trouble if he did that, it seems to us that no reasonable trier of the fact could find that such lawful conduct was "reckless" so as to deprive Paolello of a justification defense which he might otherwise have.[2] Al's Tavern, after all, was a public place of business and, at least as far as the record shows, Paolello went there for legitimate purposes and had no reason to believe that he would be in danger there. This case differs qualitatively from one in which, for example, a defendant enters a premises to commit a crime and then is confronted with an armed occupant. Inasmuch as *One 107.9 Acre Parcel of Land* includes the first and third elements of the four-part test followed by other courts of appeals and we are now explicitly adopting the other two elements, at least in criminal cases, our test may be regarded as consistent with the test as adopted by these other courts.

c. *Justification Defense Under 18 U.S.C. § 922*

██ The government argues that we should adopt a restrictive view of the justification defense in the context of 18 U.S.C. § 922 charges and we agree. It points out that Congress wrote section 922(g) in absolute terms, leaving little room for any defense based on a lack of intent.[3] Indeed, the Supreme Court itself noted that Con-

gress "sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous. These persons are comprehensively barred by the Act from acquiring firearms by any means." *Barrett v. United States*, 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976). Nonetheless, the courts of appeals, including this court, have recognized that the justification defense is available under this statute. *See United States v. Gray*, 878 F.2d 702, 704 n. 2 (3d Cir.1989) (the government did "not contest that, if proven in the appropriate case, duress or justification is a complete defense."). *See also United States v. Panter*, 688 F.2d 268, 271 (5th Cir.1982); *United States v. Agard*, 605 F.2d 665, 667 (2d Cir.1979).[4] The courts have justified this conclusion on the ground that Congress legislated against the backdrop of the common law which has historically recognized this defense. *Accord, United States v. Bailey*, 444 U.S. at 415 n. 11, 100 S.Ct. at 637 n. 11 ("Congress in enacting criminal statutes legislates against the background of Anglo–Saxon common law").

However, several courts have limited the breadth of the justification defense when advanced in the section 922 context in order to achieve the statute's purposes. *See, e.g., United States v. Vigil*, 743 F.2d 751, 756 (10th Cir.) ("this statutory provision regarding the purpose of [section 922] makes it extremely difficult for one to successfully raise the defense of necessity to that charge"), *cert. denied*, 469 U.S. 1090, 105 S.Ct. 600, 83 L.Ed.2d 709 (1984). Thus, some courts have emphasized that an interdicted person may possess the firearm no longer than absolutely necessary. *United States v. Singleton*, 902 F.2d 471, 472–73 (6th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990); *United*

---

**2.** In fairness to the government it must be said that the characterization of "bad" came from Williams.

**3.** Title 18 U.S.C. § 922(g)(1) provides "It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; to ... possess in or affecting commerce, any firearm...."

**4.** We do not distinguish between cases decided under 18 U.S.C.App. § 1202 and 18 U.S.C. § 922(g). Section 922(g), the statute under which Paolello was charged, recodified and amended section 1202, but the changes do not affect our analysis. *See United States v. Balascsak*, 873 F.2d 673, 674 n. 1 (3d Cir.1989).

States v. Stover, 822 F.2d 48, 50 (8th Cir. 1987). Other courts have simply limited the justification defense in general by requiring that the defendant put forth evidence on all elements of the defense. United States v. Bifield, 702 F.2d at 345–46.

The restrictive approach is sound. Congress wrote section 922(g) in absolute terms, banning any possession of firearms by all convicted felons. To ensure that this strict prohibition is effectuated, we should require that the defendant meet a high level of proof to establish the defense of justification.[5]

d. Justification in This Case

◼ Even under a narrow view of the justification defense in section 922(g) prosecutions, the evidence presented by Paolello, if believed, supported his defense, and the district court should have instructed the jury accordingly. See United States v. Bifield, 702 F.2d at 346. First, there was sufficient evidence, if believed, to demonstrate that Paolello was subject to a threat of death or serious bodily harm. Williams testified that a man punched him in the face, and that the same man struggled with Paolello. Paolello testified that this man had harassed him while he was in the bar, and that the man had followed him out of the bar, demanding that Paolello buy him a drink. According to Paolello, the man also stated that he could take all of Paolello's money away to buy the drink if he so desired.

Paolello further testified that, after Williams left the bar to join Paolello, he saw this man punch Williams, and at that point noticed that the man had a gun. According to Paolello, he knocked the gun out of the man's hands to keep him from shooting Williams. He then grabbed the gun to avoid being shot himself instead of leaving it on the ground. Further, he testified that he ran away with the gun because he was afraid that the man would send his "friends" after him. Viewing this evidence in the light most favorable to Paolello, it is sufficient to establish that he was subject to an immediate threat of death or serious bodily harm.

Furthermore, under the defense version of the facts, the evidence supported a determination that Paolello had a well-grounded fear that threat would be carried out. Paolello testified that he grabbed the gun and ran because he "wasn't going to leave it there for him to shoot me with it." He also testified that he was "so scared," because he thought that the man and his friends were going to run after him. Taken in the light most favorable to Paolello, this testimony is sufficient to establish that he actually and reasonably feared that the threat would be carried out.

In addition, the evidence supported a conclusion that Paolello did not have a reasonable opportunity to escape the threatened harm without taking the gun, and that there was a direct causal relationship between that action and the avoidance of the threatened harm, i.e., being shot. See United States v. Bailey, 444 U.S. at 410, 100 S.Ct. at 635. Paolello stated that he grabbed the gun after it had fallen to the ground to avoid being shot or to prevent Williams from being shot. He ran down the alley with the gun because he was afraid the man or his friends would attack him. This testimony indicates that there was no other way for Paolello to take preventive action other than by grabbing the weapon. It is true that Kress testified that he chased Paolello down the alley, ordering him to stop running and identifying himself as a policeman, and that Paolello disobeyed the orders. If Kress's testimony is believed, this would severely undercut Paolello's justification defense because it would appear that Paolello had an opportunity to dispose of the gun and stop running earlier than he did, so that he possessed the firearm longer than absolutely necessary.

Yet Paolello testified that, in contrast to Kress's rendition of the events, he ran down the alley because he was afraid that the man who had punched Williams and had argued with Paolello would instruct his

5. Obviously we have no reason to consider whether justification may be a defense to criminal charges other than those under section 922(g). We are confining our opinion to what is before us.

"friends" to chase Paolello. He also testified that as he "was running into the alleyway, I didn't know anybody was behind me.... I heard somebody say 'Stop,' you know? And I turned around, and I dropped the gun.... He said 'I'm an officer' and I just stopped." Because we must accept in the procedural posture of this case Paolello's version of the facts in the record, it appears that Paolello did not maintain possession of the weapon any longer than absolutely necessary. Thus, even if we find Paolello's testimony unpersuasive, his credibility should be judged by the jury. *United States v. Rockwell*, 781 F.2d 985, 990 (3d Cir.1986). In sum, Paolello put forth sufficient evidence concerning each of the elements of the justification defense and the district court should have instructed the jury on that theory.[6]

e. *The Charge did not Adequately Instruct the Jury on Paolello's Justification Defense.*

■ Although Paolello was entitled to a jury instruction on justification, he had no right to compel the district court to use the precise charge he requested at the charge conference. *United States v. Goldblatt*, 813 F.2d 619, 623 (3d Cir.1987). Thus, we must examine the district court's charge as a whole to determine whether it articulated the proper legal principles concerning the defense of justification. *Id.*

■ At the charge conference, Paolello's attorney asked the court to instruct the jury on four points for charge, which he characterized as "Necessity," "Only Available Choice," "Reasonable Belief of Defendant," and "Reasonable Alternative." The district court refused, holding that "we don't think the facts in this case justify a specific instruction as to necessity or that this jury should be told anything about necessity." Instead, the court held that it would instruct the jury that "knowingly," under section 922(g) does not include "accident, mistake or other innocent reason."

In the court's view, "any innocent reason" was broad enough to include defendant's justification defense. Further, the district court stated that it would permit counsel for Paolello to argue Paolello's justification defense to the jury in his closing statement. At the charge conference, counsel for Paolello objected to the charge as articulated by the district court, urging that "the Court in some fashion convey to the jury that they may consider as a matter of law the contentions made by the defense."

At trial, the court adhered to its ruling at the charge conference and did not give any instruction on the defenses of necessity or justification. However, it did instruct the jury that:

> An act is done knowingly if done voluntarily and intentionally and not because of mistake or accident or otherwise innocent reason. The purpose of adding the word knowingly is to insure that no one will be convicted for an act done because of mistake or accident or other innocent reason.

App. at 470–71.

Paolello's attorney objected to this charge because it did not cover the points he raised at the charge conference.

Although the district court properly charged the jury with regard to the mental state of "knowingly," the charge did not effectively articulate established legal principles concerning justification even though Paolello was entitled to that charge. Indeed, the charge "begs the question" by improperly shifting to the jury the authority to determine what is "innocent," instead of delegating to the jury its traditional role as fact-finder within the parameters of legal doctrine. Furthermore, even if it had been permissible to submit the justification defense to the jury as part of its determination whether the defendant acted "knowingly," the colloquy during the prosecutor's rebuttal strongly suggested to the jury that they should not consider this defense at all.[7] We also point out that the court

---

6. We have already indicated that there was no basis to conclude that Paolello was reckless.

7. The prosecutor told the jury that defense counsel "wants you to believe this was out of

necessity. That defense is not available to him under the law." The following then occurred:

> [DEFENSE COUNSEL]: Objection, that's for the jury to decide.

conflated the concepts of "knowingly" acting and acting for an "innocent" reason as it seems clear that the fact that a person acts for an innocent reason in no way detracts from the knowing quality of his act.

### III. CONCLUSION

In conclusion, we have determined that in this case the jury should have been instructed on the justification defense and, as it was not, we will reverse the judgment of conviction and sentence and will remand the matter for a new trial. At oral argument before us the parties agreed that if there were a new trial it would be Paolello's burden to produce evidence to support the justification defense and, if he did so, it would be the government's burden to disprove that defense beyond a reasonable doubt. We think, however, that inasmuch as there may be some question as to whether this agreement accurately reflects the law and, in view of the further fact that the briefs understandably do not focus on the issue, that it would be prudent to leave for determination on the remand the allocation of burdens on the justification defense.[8] *See Patterson v. New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977); *United States v. Santos,* 932 F.2d at 249.

---

[PROSECUTOR]: No, Your Honor, it's up to the Court to decide.
THE COURT: We think that's a correct statement in view of the Court's ruling, but we think it's also true that it will have a bearing on whether or not the Defendant knowingly possessed the gun. We'll talk to the jury about that if we ever get a chance.
You may continue.
[PROSECUTOR]: Sure....
*Now, you will not hear from the Judge the defense of necessity. Plain and simple, you won't hear it. That's the bottom line. You're not going to hear it, all right?*
App. at 574–75 (emphasis added).
Since, as the prosecutor predicted, the judge did not instruct the jury on the defense of justification, it seems likely that the jury was left with the impression his his defense was not before them in any form.

**8.** At the trial Paolello sought to introduce into evidence written reports of agent David Johnson of the Bureau of Alcohol, Tobacco and Firearms to contradict certain testimony of Kress and Liebel and to establish the truth of the facts in the statements. The district court refused to admit the evidence as it did not view it as inconsistent with the testimony at trial. While Paolello raises this point as an additional basis for reversal we need not reach it as we are reversing on the basis of the charge and we think that the question could be better determined in the context of the evidence at the retrial. Paolello also has appealed from the denial of a 2–*level* reduction in his sentence for acceptance of responsibility and from the refusal of the district court to grant him credit against his sentence for time served. In view of our result these points are moot.