

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-4-2006

# USA v. Reed

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1367

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Reed" (2006). *2006 Decisions.* Paper 1324.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1324

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

────────

No. 05-1367

────────

UNITED STATES OF AMERICA

v.

HASAN REED,

Appellant

────────

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 04-00042)
Honorable Alan N. Bloch, District Judge

────────

Submitted under Third Circuit LAR 34.1(a)
March 6, 2006

BEFORE:  ROTH and GREENBERG, Circuit Judges, and
BUCKWALTER, District Judge*

(Filed:  April 4, 2006)

────────

OPINION OF THE COURT

────────

GREENBERG, Circuit Judge.

────────

*Honorable Ronald L. Buckwalter, Senior Judge of the United States District Court for
 the Eastern District of Pennsylvania, sitting by designation.

I.  INTRODUCTION

This matter comes on before this court on appeal by defendant Hasan Reed from a judgment of conviction and sentence entered on January 27, 2005. Following a jury trial, Reed was convicted under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) for possession of a firearm by a convicted felon and sentenced to a 78-month custodial term to be followed by a three-year term of supervised release. For the following reasons, we will affirm.[1]

## II. FACTUAL BACKGROUND

The parties do not dispute the relevant facts. On January 11, 2004, Officers Robert Kavals, Daniel Hartung, and Philip Mercurio of the Pittsburgh Police Department observed a black Ford Focus with three occupants fail to stop at a stop sign. Although the officers activated the lights and siren on their patrol car, the driver did not pull the vehicle over. During the ensuing pursuit, the officers observed the front-seat passenger, who was wearing a beige coat, extend his right arm out of the car window and drop a black gun. The officers continued to pursue the vehicle, and alerted officers in another patrol car to retrieve the gun.[2]

Shortly thereafter, the Ford Focus crashed, and its three occupants fled on foot. Officer Kavals apprehended the person who fled from the front passenger seat of the

---

[1]The district court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[2]The police later identified the gun as a loaded Ruger semi-automatic pistol but they were unable to detect any fingerprints on the gun. There were, however, prints on the magazine but they were not those of the car driver, Gene Hughey, or of Reed.

vehicle and later identified him as Reed. Although Reed was not wearing a beige coat at the time of his apprehension, Officer Kavals testified that Reed initially had on a beige coat when he fled on foot, but "he threw it off." App. at 167. The officers also apprehended the driver, Gene Hughey, and the rear-seat passenger, Danielle Smith.

A grand jury subsequently indicted Reed for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Reed pleaded not guilty following which a jury trial commenced on August 23, 2004. Prior to trial, Reed filed an in limine motion seeking an order that at the trial the court would admit into evidence "reverse [Rule] 404(b) evidence" to the effect that Gene Hughey, the driver of the Ford Focus, had a prior conviction for unlawful possession of a firearm. Moreover, Reed sought an order permitting the defense to call Hughey as a witness at trial for the sole purpose of having him invoke his Fifth Amendment privilege not to testify in front of the jury. At the time that Reed filed his motion he knew that, if called as a witness, Hughey would invoke his Fifth Amendment privilege against self incrimination as Hughey's attorney had advised him that he would do that. The district court denied both requests.

At trial, Reed testified that he was in the Ford Focus with Hughey, its driver, at the time of the incident because Hughey was a jitney driver, and Reed had called Hughey to take him from his cousin's residence to his own residence.[3] According to Reed, Hughey

---

[3]Reed does not contest that he was a convicted felon.

3

sped up when the police attempted to stop the car, and "[Hughey] said he wasn't going to stop the car until he got away[.]" App. at 198. Reed further testified that he became nervous because Hughey was "almost crashing," as he was "speeding off trying to get away from [the police]." App. at 200. At that point, Reed noticed a gun "in between [the] console and [Hughey's] seat[,]" app. at 200, and, as Hughey made a sharp turn, Reed "rolled the window down and reached for the gun and put it in [his] right hand and threw it out the window," app. at 200-01. Reed explained that he threw the gun away because "[Hughey] might have been planning to do something with [the gun] to the cops or to [him], . . . so [Reed] was trying to get it away from him." App. at 201. Reed claimed that Hughey was yelling and told Reed that Reed "was going to make matters worse for [him]self." App. at 201. At the close of trial, the district court denied Reed's request to instruct the jury on the defense of justification on the grounds that "[Reed] failed to establish [the] unlawful and present threat of death or serious bodily injury." App. at 212.

As we have indicated, the jury found Reed guilty. Prior to sentencing, Reed urged the district court to reduce his offense level based on his "acceptance of responsibility" pursuant to United States Sentencing Guideline ("U.S.S.G.") § 3E1.1. The district court calculated Reed's total offense level as 20, which it declined to reduce for acceptance of responsibility as it reasoned that "[m]erely admitting to conduct comprising the offense . . . does not necessarily demonstrate that a defendant has 'clearly' accepted responsibility for the 'offense.'" App. at 272-73. The district court, however, increased Reed's criminal

4

history category from IV to V,[4] reasoning that his criminal history, "as calculated in accordance with the guidelines does not adequately reflect the seriousness of the defendant's criminal history or the likelihood that [he] would commit other crimes." App. at 283-84. As we have indicated, the district court sentenced Reed to a custodial term of 78 months to be followed by a three-year period of supervised release. Reed timely appealed.

## III. DISCUSSION

### A. Justification Defense

Reed first argues that the district court erred in declining to charge the jury on the defense of justification. Reed asserts that, "[t]o the extent that Third Circuit case law requires that potential harm be imminent and immediate in order to satisfy the first element of justification, it is too far restrictive and should be expanded." Appellant's br. at 26. We exercise plenary review over the district court's refusal to charge the jury on the defense of justification. United States v. Paolello, 951 F.2d 537, 539 (3d Cir. 1991) ("[W]e will . . . make a plenary legal determination of whether justification could have been a defense to the indictment.").

In general, a defendant must demonstrate the following four elements to establish

---

[4]At the total offense level of 20 involved here, category IV carries a sentencing guideline range of 51 to 63 months, and category V carries a sentencing range of 63 to 78 months.

the defense of justification:

> (1) he was under unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and (4) there is a direct causal relationship between the criminal action and the avoidance of the threatened harm.

Id. at 540. Therefore, as Reed correctly observes, justification may be a valid defense to a felon in possession of a firearm charge under 18 U.S.C. § 922(g). United States v. Dodd, 225 F.3d 340 (3d Cir. 2000). Courts, however, narrowly construe the defense of justification in the felon-in-possession context, see Paolello, 951 F.2d at 541-42, in recognition of the reality that "[i]f ex-felons who feel endangered can carry guns, felon-in-possession laws will be dead letters." United States v. Perez, 86 F.3d 735, 737 (7th Cir. 1996); see also United States v. Perrin, 45 F.3d 869, 874 (4th Cir. 1995) ("It has been only on the rarest of occasions that our sister circuits have found defendants to be in the type of imminent danger that would warrant the application of a justification defense.").

Here, the district court correctly determined that Reed failed to satisfy the first element necessary to establish the defense of justification, namely that "he was under unlawful and present threat of death or serious bodily injury," because "[he] presented no evidence of an altercation, nor did he present any evidence that would suggest that the driver had threatened to shoot anyone." App. at 212. Although it may have been perfectly rational for Reed to have been concerned about Hughey's conduct, he failed to meet the legal standard of a justification defense because he was not in imminent danger.

6

We reach this conclusion because our study of the record convinces us that Reed did not have a "well-grounded" fear that the driver would shoot him, or for that matter the police. See 951 F.2d at 542. We realize that Reed testified that Hughey, the jitney driver, was yelling and refused to pull over. That conduct, however, even coupled with the presence of a firearm in the console, did not put Reed in a position that he reasonably feared "an immediate threat of death or serious bodily harm" to himself or even to the police. See id. at 542. Therefore, the district court properly refused to charge the jury on the defense of justification.

B. Evidentiary Rulings

Next, Reed argues that the district court denied Reed the constitutional right to a defense by (1) excluding evidence of Hughey's prior conviction under Fed. R. Evid. 404(b) ("Rule 404(b)"), and (2) refusing to allow Hughey to testify for the purpose of invoking his Fifth Amendment privilege in front of the jury. We review the district court's evidentiary rulings for abuse of discretion. See United States v. Versaint, 849 F.2d 827, 831 (3d Cir. 1988) ("We review district court decisions to admit or exclude evidence under an abuse of discretion standard."); United States v. Griffin, 66 F.3d 68, 70 n.6 (5th Cir. 1995) (reviewing for abuse of discretion district court's denial of defendants' request to call witness to the stand for purpose of asserting Fifth Amendment privilege). Under the abuse of discretion standard, the decision is to be reversed if arbitrary or irrational. United States v. Universal Rehab. Servs., 205 F.3d 657, 665 (3d Cir. 2000).

1. Reverse Rule 404(b) Evidence

7

"In contrast to ordinary 'other crimes' evidence [under Rule 404(b)], which is used to incriminate criminal defendants, 'reverse [Rule] 404(b)' evidence is utilized to exonerate defendants." United States v. Stevens, 935 F.2d 1380, 1402 (3d Cir. 1991). The admissibility of reverse Rule 404(b) evidence depends on a straightforward balancing of the probative value of the evidence under Fed. R. Evid. 401 against Fed. R. Evid. 403 considerations, such as undue waste of time and confusion of the issues. Id. at 1404-05. The relevancy and probative value of reverse Rule 404(b) evidence depends on the degree of similarity between the charged offense and the reverse Rule 404(b) evidence. Id. at 1401. Nonetheless, we have recognized that "a lower standard of similarity should govern 'reverse Rule 404(b)' evidence because prejudice to the defendant is not a factor." Id. at 1404. Thus, "[a]ll that is necessary is that the evidence satisfy the relevancy standard of Rule 401." Id. at 1405.

In Stevens, we held that the district court erred in excluding evidence of a similar robbery involving a victim who failed to identify the defendant as the assailant. We based our conclusion on the significant similarities between the charged robbery and the evidence concerning the later robbery, such as location (occurring within a "few hundred yards of one another"), weapon used (handgun), and the time at which the robberies occurred. Id. at 1401. We also noted the inherent unreliability of the cross-racial identifications on which the government's case rested. Id. at 1405. Therefore, we concluded that evidence of a similar robbery involving a different assailant "had a tendency to make [the defendant's] guilt less probable." Id.

8

Here, the district court properly excluded the evidence concerning Hughey's prior conviction because it failed to satisfy the relevancy standards set forth in Rule 401. More specifically, the evidence regarding Hughey's prior conviction did not tend to make Reed's guilt less probable, see Stevens, 935 F.2d at 1405, because Reed's conduct indisputably satisfies the elements necessary to prove a felon-in-possession charge.[5] After all, Reed's act of throwing the firearm out of the car window was sufficient to establish his possession of the weapon, see United States v. Barnett, 398 F.3d 516, 522 (6th Cir 2005); United States v. Johnson, 55 F.3d 976, 979 (4th Cir. 1995), and Reed admitted that he "rolled the window down and reached out for the gun and put it in [his] right hand and threw it out the window." App. at 200-01. Therefore, the district court properly excluded evidence of Hughey's prior conviction inasmuch as such evidence in no way could present the jury with a way to find that Reed's unlawful possession of the weapon was justified. In this regard we point out that if in fact Hughey owned the firearm his ownership did not negate the overarching fact that, as we have explained, Reed had possession of it.

2. Testimony of Hughey

We have held that a criminal defendant may not call a witness for the sole purpose

---

[5]To establish that a defendant was a felon in possession of a firearm in violation of section 922(g)(1), the government is required to prove the following elements beyond a reasonable doubt: (1) that the defendant previously had been convicted of a crime punishable by imprisonment for a term exceeding one year; (2) that the defendant knowingly possessed a firearm; and (3) that the firearm had passed in interstate commerce. Dodd, 225 F.3d at 344.

of allowing the jury hear the witness invoke his or her Fifth Amendment privilege. See Nezowy v. United States, 723 F.2d 1120, 1124 n.6 (3d Cir. 1983) (noting "that a criminal defendant is not entitled to call a witness for the purpose of having the jury hear him 'take the Fifth'"). Other courts of appeals similarly have held that "a witness should not be put on the stand for the purpose of having him exercise his privilege before the jury," Bowles v. United States, 439 F.2d 536, 542 (D.C. Cir. 1970) (en banc); accord United States v. Griffin, 66 F.3d 68, 70-71 (5th Cir. 1995); United States v. Deutsch, 987 F.2d 878, 883-84 (2d Cir. 1993); United States v. Vandetti, 623 F.2d 1144, 1148 (6th Cir. 1980); United States v. Harris, 542 F.2d 1283, 1298 (7th Cir. 1976); United States v. Johnson, 488 F.2d 1206, 1211 (1st Cir. 1973).

This rule is well grounded as allowing a witness to testify for the purpose of invoking the Fifth Amendment "would only invite the jury to make an improper inference." Bowles, 439 F.2d at 542. Furthermore, as the court explained in United States v. Klinger, 128 F.3d 705, 709 (9th Cir. 1997), "[t]he rationale for this rule is that the prosecution would be denied the opportunity to cross-examine the defendant's witness if that witness were simply to invoke his or her Fifth Amendment privilege with respect to questions on non-collateral matters. Thus insulated from cross-examination, the witness's testimony cannot be considered reliable." (citations and internal quotation marks omitted). In this case we see no circumstances that could have justified the court to depart from the general rule set forth in Nezowy v. United States, 723 F.2d at 1124 n.6. Accordingly, we find that the district court properly refused to allow Reed to call Hughey

10

to testify for the sole purpose of having him invoke the Fifth Amendment in front of the jury.

C. Sentencing

Next, Reed argues that the district court erred in declining to reduce his offense level based on his acceptance of responsibility under U.S.S.G. § 3E1.1 ("section 3E1.1"). Reed also argues that the district court misapplied the sentencing guidelines when it departed upwards from Reed's criminal history category as computed in his presentence report. Appellant's br. at 47. We reverse a district court's determination as to whether or not to grant a reduction based on a defendant's acceptance of responsibility only if the determination is clearly erroneous. United States v. Cianscewski, 894 F.2d 74, 83 (3d Cir. 1990). We review the district court's decision to depart upwards from Reed's criminal history category for reasonableness pursuant to United States v. Booker, 543 U.S. 200, __, 125 S. Ct. 738, 765-66 (2005).[6]

1. Acceptance of Responsibility under Section 3E1.1

Section 3E1.1(a) of the sentencing guidelines provides: "If the defendant clearly demonstrates acceptance of responsibility for this offense, decrease the offense level by 2 levels." We acknowledge that a "[c]onviction by trial . . . does not necessarily or

---

[6]In United States v. Cooper, 437 F.3d 324, 326 (3d Cir. 2006), we indicated that "[i]n United States v. Booker, the Supreme Court directed appellate courts to review sentences for reasonableness, stating this review applied 'across the board.'"(quoting 543 U.S. at __, 125 S. Ct. at 764-67). To determine if the court acted reasonably in imposing the resulting sentence, we must determine whether the district court properly considered the relevant factors under 18 U.S.C. § 3553(a). Cooper, 437 F.3d at 331-32.

11

automatically preclude a defendant from consideration for [an acceptance of responsibility] reduction." U.S.S.G. § 3E1.1, cmt. 2. However, a defendant's admission of factual guilt coupled with an assertion of a recognized defense at trial may preclude such a reduction. United States v. Gorsuch, 404 F.3d 543, 546-47 (1st Cir. 2005). For example, "[a]n assertion of self-defense is a denial of an essential factual element of guilt for purposes of [an acceptance of responsibility reduction]." United States v. Bello, 194 F.3d 18, 27 (1st Cir. 1999); see also United States v. Reed, 114 F.3d 1053, 1058 (10th Cir. 1997) (assertion of good faith defense "demonstrated that [defendant] did not accept responsibility for his conduct"). But see United States v. Pastor, 173 F.3d 206, 221 n.12 (3d Cir. 1999) (insanity defense may allow reduction for acceptance of responsibility) (citing United States v. Barris, 46 F.3d 33, 35 (8th Cir. 1995)). A district court's decision as to whether to grant an adjustment based on a defendant's acceptance of responsibility "is entitled to great deference on review because the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." United States v. Bennett, 161 F.3d 171, 196 (3d Cir. 1998) (internal quotation marks omitted).

Here, the district court did not clearly err in finding that Reed did not demonstrate an acceptance of responsibility because he asserted a justification defense at trial. Indeed, in a sense asserting that an act was justified reflects a state of mind completely the opposite of that of a defendant accepting responsibility. Therefore, the district court properly declined to reduce Reed's offense level for acceptance of responsibility under U.S.S.G. § 3E1.1.

2. Upward Departure

U.S.S.G. § 4A1.1 establishes a system for assigning criminal history points to establish a defendant's criminal history category predicated on the severity of his prior convictions. U.S.S.G. § 4A1.3 states, however, that a court may depart from the applicable guideline range if reliable information leads it to believe that a defendant's criminal history category under- or over-represents the seriousness of the defendant's past criminal history. But a court contemplating departing upwards from the applicable guideline range must give the defendant notice of a possible upward departure, and the court did not do that here. See United States v. Queensborough, 227 F.3d 149, 153 (3d Cir. 2000). As the Supreme Court said in Burns v. United States, 501 U.S. 129, 138-39, 111 S.Ct. 2182, 2187 (1991):

> before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, . . . the district court [must] give the parties reasonable notice that it is contemplating such a ruling. This notice must specifically identify the ground on which the district court is contemplating an upward departure.

Nonetheless, "[a] district court's failure to provide notice before departing upward may be considered harmless unless the defendant can prove that he would have done things differently had notice been given." United States v. Himler, 355 F.3d 735, 742 (3d Cir. 2004).

In this case, the district court's failure to provide Reed with notice of the upward departure was a harmless error because Reed failed to "prove that he would have done

13

things differently had notice been given." Id. at 742. Furthermore, we cannot say that the district court's sentence was unreasonable. In imposing the sentence, the district court expressly considered "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need to "protect the public from further crimes of the defendant." See 18 U.S.C. § 3553(a). Therefore, because the district court believed that the criminal history points under-represented the seriousness of Reed's prior convictions, it properly departed upwards from the presentence report.

D. Constitutionality of 18 U.S.C. § 922(g)

Finally, Reed argues that 18 U.S.C. § 922(g) ("section 922(g)"), which criminalizes a prior felon's possession of a firearm that has passed through interstate commerce, is unconstitutional, and that "Congress exceeded its power under the Commerce Clause of the Constitution by enacting this statute." Appellant's br. at 49. According to Reed, "a gun which, like the gun in this case, once crossed a state line does not forever have a 'substantial' relation to interstate commerce," and thus falls outside of Congress' authority under the Commerce Clause. Appellant's br. at 53 (emphasis in original). We review the district court's order upholding the constitutionality of section 922(g) and refusing to dismiss the indictment on a plenary basis. See United States v. Singletary, 268 F.3d 196, 198-99 (3d Cir. 2001).

We will not linger on this point inasmuch as our decision in Singletary in which we held that "proof . . . that the gun had traveled in interstate commerce, at some time in the past, was sufficient to satisfy the interstate commerce element," 268 F.3d at 205,

14

forecloses Reed's constitutional challenge to section 922(g).  Though Reed argues that "Singletary was wrongly decided," appellant's br. at 55, plainly it is binding on this panel. See Third Circuit I.O.P. 9.1.

## IV.  CONCLUSION

For the foregoing reasons, we will affirm the judgment of conviction and sentence entered January 27, 2005.

———————