

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-27-2008

# USA v. Jackson

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4784

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Jackson" (2008). *2008 Decisions*. Paper 969.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/969

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4784
_____

UNITED STATES OF AMERICA

v.

ANTHONY N. JACKSON,
                    Appellant.


_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 04-327)
District Judge: Honorable Gary L. Lancaster
_____

Submitted Under Third Circuit LAR 34.1(a)
on March 10, 2008

Before: FUENTES, CHAGARES and ALDISERT, Circuit Judges.

(Filed   June 27, 2008  )
_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge.

Anthony N. Jackson appeals from the judgment of conviction and sentence entered by the United States District Court for the Western District of Pennsylvania. Jackson, who was charged with and convicted of being a felon in possession pursuant to 18 U.S.C. § 922(g), alleges that the District Court erred by refusing to permit a jury instruction on the affirmative defense of "transitory possession"; by permitting two police officers to testify to prior encounters with Jackson; and by denying Jackson's motion for acquittal. This Court has jurisdiction over Jackson's appeal pursuant to 28 U.S.C. § 1291. For the reasons stated below, we will affirm the District Court.

## I.

At 2:00 a.m. on the morning of July 17, 2004 in Pittsburgh, Pennsylvania, police officers in an unmarked car observed a 1999 silver Dodge Stratus fail to stop at a stop sign; the Dodge then made two turns without signaling. The police officers activated their unmarked car's emergency lights and siren and pulled the Dodge over. The officers observed four occupants in the Dodge, and one of the officers recognized the driver as Jamal Williams. When the officers ordered Williams to turn the car off, Williams drove away. The officers pursued the Dodge for approximately two miles at a high speed, and were joined by two other marked police cars who had observed the failed traffic stop. The Dodge pulled into a parking lot adjacent to an apartment complex, and Williams and Jackson (who had been sitting in the front passenger seat) jumped out of the car and fled

2

into the complex, locking a security door behind them. During their pursuit of the two men, the officers observed Williams carrying a handgun. They also saw Jackson crash into a charcoal grill, spraying white dust on himself and his hands.

A resident of the apartment building opened the security door for the officers, who tracked Jackson and Williams to apartment 7190-B based on the charcoal handprints on the door. One set of officers knocked on the front door of apartment 7190-B and identified themselves. Another set of officers went around the building to the back of the apartment. The occupant of the apartment eventually opened the door for the police, who observed an unarmed Williams sitting on a couch; he was subsequently arrested.

In the meantime, one of the officers at the back of the apartment, Detective Robert Kavals, identified Jackson through the window. Detective Kavals made the identification based on four or five past encounters with Jackson, including one that had taken place three weeks prior to the night in question and had lasted 30 to 40 minutes. Detective Kavals subsequently observed Jackson tossing two guns out the window. The police at the front of the apartment then spotted Jackson, and arrested him.

Jackson was charged with unlawful possession of the two handguns he tossed out the window, in violation of 18 U.S.C. § 922(g). Following a trial, a jury returned a verdict of guilty on all counts, and Jackson was subsequently sentenced to 180 months' imprisonment.

On appeal, Jackson argues that the District Court: (1) committed reversible error by allowing two police officers to testify to prior encounters with Jackson; (2) committed reversible error in refusing to recognize the defense to § 922(g) of transitory possession and declining to give a jury instruction related to the defense; and (3) erred in denying Jackson's motion for acquittal. We will address each in turn.

## II.

Jackson argues that the District Court erred by permitting the testimony of two police officers, Officer Rattigan and Detective Mercurio. Jackson's sole challenge to the admission of the officers' testimony was to its relevancy pursuant to Fed. R. Civ. P. 403, which allows exclusion of evidence only if its unfairly prejudicial effect "substantially outweighs" its probative value.[1] Goodman v. Pennsylvania Turnpike Comm'n, 293 F.3d 655, 670 (3d Cir. 2002). Unfair prejudice "does not simply mean damage to the opponent's cause," but must be "the sort which cloud[s] impartial scrutiny and reasoned evaluation of the facts, which inhibit[s] neutral application of principles of law to the facts as found." Id. Our review of the District Court's evidentiary ruling is for abuse of discretion. United States v. Brink, 39 F.3d 419, 425 (3d Cir. 1994).

---

[1] On appeal, Jackson also claims that this testimony is violative of Fed. R. Evid. 402 and Fed. R. Evid. 404(b). As Jackson did not object to the testimony on these grounds at trial, any such claim is reviewed for plain error. United States v. Brink, 39 F.3d 419, 425 (3d Cir. 1994). The doctrine of plain error "provides for correction of a mistake so plain the trial judge was derelict in countenancing it, even absent the defendant's timely objection." Id. at 425 n.10 (internal quotation marks omitted). The District Court clearly did not make such a mistake here.

4

The testimony in question was limited by the District Court to the fact that the two officers recognized Jackson from previous encounters, none of which were described. That the officers recognized Jackson – and were thus able to correctly identify him as the person who dropped the firearms out the window – is clearly more probative than prejudicial. Consequently, we find that the District Court did not abuse its discretion by admitting the testimony.

### III.

To convict Jackson pursuant to § 922(g), the felon-in-possession statute, the government was required to demonstrate that Jackson had a prior felony conviction punishable by more than one year of imprisonment, that the firearms passed through interstate commerce, and that Jackson "knowingly possessed" the firearms. See United States v. Dodd, 225 F.3d 340, 344 (3d Cir. 2000). To carry its burden on the final element, the government need only show that Jackson was aware of his possession of the firearms; it "need not demonstrate that [Jackson] possessed the firearm[s] with an intent to cause harm, or with knowledge that such possession was unlawful." Id.

Jackson argues that the testimony of Detective Kavals, the officer who claimed to have identified Jackson through the window and observed him disposing of the firearms in question, was "inherently contradictory and highly suspect." Appellant's Br. at 47. He does not, however, dispute that it was he who dropped the guns from the window. By contrast, Jackson admits "brief possession" of the firearms "at the instant of their

5

disposal." Id. at 49. The crux of his argument on appeal is that this "brief possession,"

entitled him to avail himself of an affirmative defense.[2]

Section 922(g) does not provide for any affirmative defenses. The courts of

appeals, however, including this one, have recognized that a "justification" defense is

available under the statute. United States v. Paolello, 951 F.2d 537, 541 (3d Cir. 1991).

Such a defense is only available if a defendant can demonstrate that he or she was "under

unlawful and present threat of death or serious bodily injury" at the time of the

possession; moreover, this Court has taken a "restrictive approach" towards the defense,

permitting it only when a defendant has "me[t] a high level of proof." Id. at 540-41.

Here, Jackson does not seek – and the record does not support – invocation of this

affirmative defense. Instead, Jackson argues that this Court should recognize an

additional affirmative defense, that of "transitory possession" or "temporary innocent

possession." This defense has been adopted by only one court of appeals, the District of

Columbia Circuit, in United States v. Mason, 233 F.3d 619, 621 (D.C. Cir. 2001). It has

been expressly rejected by the First, Fourth, Seventh, Ninth and Tenth Circuits. See

United States v. Teemer, 394 F.3d 59, 64 (1st Cir. 2005); United States v. Gilbert, 430

---

[2] At the same time that Jackson argues that he is eligible for an affirmative defense, he contends that there was insufficient evidence to support the guilty verdict; he argues that the government failed to demonstrate that he "knowingly possessed" the weapons, and could prove only that he held them for a "mere instant." Appellant's Br. at 47. However, this element, as discussed above, requires only a showing that Jackson was aware that he possessed the weapons – which is clearly the case, as he has admitted to holding them in the process of disposing them. Consequently, there is sufficient evidence to sustain the guilty verdict.

F.3d 215, 220 (4th Cir. 2005); United States v. Hendricks, 319 F.3d 993, 1007 (7th Cir. 2003); United States v. Johnson, 459 F.3d 990, 998 (9th Cir. 2006); United States v. Baker, 508 F.3d 1321, 1325 (10th Cir. 2007). Mason held that the "transitory possession" defense requires the defendant to demonstrate that "(1) the firearm was attained innocently and held with no illicit purpose and (2) possession of the firearm was transitory." Mason, 233 F.3d at 624. Satisfaction of the second element requires a showing "both that he [or she] had the intent to turn the weapon over to the police and that he [or she] was pursuing such an intent with immediacy and through a reasonable course of conduct." Id. (emphasis added) (quoting Logan v. United States, 402 A.2d 822, 827 (D.C. 1979)). Jackson argues that he provided evidence sufficient to satisfy both elements of the affirmative defense of "transitory possession" and to warrant its consideration by the jury. Appellant's Br. at 47. Consequently, he contends that the District Court erred by failing to instruct the jury on the defense.

As noted above, this Court has not recognized the affirmative defense of "transitory possession," and there is no need to decide the issue on these facts. Even if we were to recognize the defense as set forth in Mason, there is no support in the record to permit an instruction on the defense to go to the jury.[3] Jackson adduced no evidence to suggest that he had obtained the weapons in an "innocent" fashion. Moreover, there was

---

[3] We note that the District Court found a factual predicate for "transitory possession" existed (though ultimately concluded that the defense itself was not valid); we find this conclusion to be clearly erroneous.

no evidence to show that Jackson intended to turn the weapons over to the police or that he was pursuing such an intent with "immediacy and through a reasonable course of conduct." Mason, 233 F.3d at 624 (quotation marks and citation omitted). Instead, Jackson threw the two guns out of a window, which certainly does not demonstrate an "intent to turn the weapon[s] over to the police." Id. (quotation marks and citation omitted).

## IV.

Jackson's final argument is that the District Court erred when it denied Jackson's motion for acquittal. He contends that the motion should have been granted both because the government failed to meet its burden on the "knowingly possessed" element (so that there was insufficient evidence to support the guilty verdict), and because the jury was not instructed on the affirmative defense of "transitory possession." For the foregoing reasons, we do not find either of these arguments persuasive.

## V.

For the reasons discussed above, we will affirm the judgment of the District Court.