FILED
United States Court of Appeals
Tenth Circuit

December 15, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JULIUS FERRELL BLACK,

    Defendant - Appellant.

No. 17-7027
(D.C. No. 6:16-CR-00076-RAW-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

A jury convicted Julius Ferrell Black of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and the district court sentenced him to 120 months of imprisonment. Mr. Black now appeals from the district court's refusal to instruct the jury on his necessity defense. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

On June 29, 2016, Mr. Black and his girlfriend went to a swimming spot at a river near Tahlequah, Oklahoma. They argued, and she left him there. Along with a friend, Joshua Reynolds, and some others, Mr. Black caught a ride home with Gary Howe, in Mr. Howe's pickup truck. Once the group arrived at Mr. Black's house, there was some arguing. Mr. Reynolds and his girlfriend left, and Mr. Black and Mr. Howe told differing stories about what happened.

According to Mr. Howe, Mr. Black approached the truck window and thanked him for the ride, but then pulled out a gun, pointed it at him, and started screaming, "this was the real deal, this is real time." R., Vol. II at 50. Mr. Black hit Mr. Howe in the head two or three times with the gun, grabbed his truck keys, and jerked him out of the truck onto the ground before going inside the house.

In contrast, according to Mr. Black, Mr. Howe asked for methamphetamine and offered to trade a couple of guns. When Mr. Black refused, Mr. Howe reached into the truck and pulled out something wrapped in a shirt that he handed to Mr. Black. Mr. Black could tell it was a gun, tried to give it back, and asked Mr. Howe to leave. Mr. Howe started to unwrap the gun, and Mr. Black grabbed it back so Mr. Howe could not use it. In the ensuing fight, Mr. Black hit Mr. Howe on the head. Mr. Black took the truck keys so that Mr. Howe could not access any other guns in the truck, and he brought the gun he was holding into the house to protect his cousin and her daughters, who also lived there. He said he told Mr. Howe to get Mr. Reynolds, and Mr. Black would give Mr. Reynolds the truck keys and the gun.

2

What happened next is undisputed. Mr. Howe walked to a friend's house and called 911. After a deputy sheriff met with Mr. Howe, officers went to Mr. Black's house. They arrived one to two hours after the altercation. Mr. Black's cousin admitted them, and they found Mr. Black lying in bed asleep in his room, naked, with the gun on the nightstand. It was unloaded, and its serial number was scratched off. Mr. Howe's truck keys were in a pocket of Mr. Black's shorts. The officers took Mr. Black to jail.

Mr. Black was indicted for being a felon in possession of a firearm and possessing a firearm with an obliterated serial number. He exercised his right to a jury trial. At trial, he sought to argue that Mr. Howe pulled the gun on him and that he took possession of the gun as a matter of self-defense or necessity. He therefore requested a jury instruction on necessity. The district court declined, stating that even if Mr. Black's initial possession of the gun were justified by necessity,

> [T]he necessity only lasts as long as the danger does. And he can say, well, you know, he might be lurking out there. But . . . he didn't warn anyone else in the house. He didn't go next door and call the police. He fell asleep. . . . I think there's no greater evidence that the sense of imminent danger is gone than that he falls asleep with the gun three feet away.

R., Vol. II at 234. The jury convicted Mr. Black of being a felon in possession of a firearm, but it acquitted him of possessing a firearm with an obliterated serial number.

## ANALYSIS

"As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to

3

find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). However, "[a] defendant is not entitled to an instruction which lacks a reasonable legal and factual basis." *United States v. Al-Rekabi*, 454 F.3d 1113, 1121 (10th Cir. 2006) (internal quotation marks omitted). We review the denial of the instruction for abuse of discretion. *Id.* at 1123.

"The necessity defense is a narrow exception to stringent federal firearms laws." *Id.* at 1121. "To qualify for an instruction on an affirmative defense such as necessity a defendant must produce evidence of each element sufficient to warrant its consideration by the jury." *Id.* at 1122. The elements of the necessity defense are "(1) there is no legal alternative to violating the law, (2) the harm to be prevented is imminent, and (3) a direct, causal relationship is reasonably anticipated to exist between defendant's action and the avoidance of harm." *Id.* at 1121 (internal quotation marks omitted). It was Mr. Black's burden to prove his defense by the preponderance of the evidence. *Id.* at 1122. In considering whether Mr. Black met his burden, we accept the testimony most favorable to him, *id.* at 1121, but we keep in mind that the necessity defense "should be strictly and parsimoniously applied," *id.* at 1122.

The district court did not abuse its discretion in declining to instruct the jury on the necessity defense. Even assuming that it was necessary for Mr. Black to take the gun from Mr. Howe, Mr. Black failed to show that he had no legal alternative other than to keep it. There is no evidence to show that he took any action to divest himself of the gun in the time before the officers arrived at the house. At trial, he

4

testified that they did not have a telephone to call the police, but he admitted that there were several neighbors within 20 to 30 feet. Further, his adult cousin also was at the house, and he could have asked her to seek help or perhaps to take the gun for safekeeping. The existence of such legal alternatives to Mr. Black's keeping the gun dooms the necessity defense. *See United States v. Bailey*, 444 U.S. 394, 410 (1980) ("[I]f there was a reasonable, legal alternative to violating the law, . . . the defense[] will fail."); *Al-Rekabi*, 454 F.3d at 1124 ("For his necessity defense to fly, [the defendant] should have caused the pistol to be turned over to the police promptly after he divested his brother of it. At the very minimum he must have demonstrated a good faith attempt to do so.").

Moreover, as the district court recognized, "[t]he justification of necessity lasts only as long as the circumstances giving rise to it." *Al-Rekabi*, 454 F.3d at 1123. Mr. Black claims that he kept the gun because he feared Mr. Howe might hurt his cousin and her daughters, but he never told his cousin about the potential danger. Moreover, after Mr. Howe had left the premises, Mr. Black fell asleep. He argues that he fell asleep while looking out the window to see if Mr. Howe was coming back. But he was not found sitting by the window; he was found stretched out in bed naked, having taken off all his clothes and left the unloaded gun on a nightstand three feet away. "His acts are simply not consistent with an imminent threat." *Id.* at 1125.

Mr. Black misplaces his reliance on *United States v. Newcomb*, 6 F.3d 1129 (6th Cir. 1993), and *United States v. Paolello*, 951 F.2d 537 (3d Cir. 1991). In those cases, the police apprehended the defendants within moments of the unfolding of the

5

imminent-harm situations and their possession of the firearms. *See Newcomb*, 6 F.3d at 1138; *Paolello*, 951 F.2d at 539, 542-43. In contrast, Mr. Black had at least one to two hours between the fight with Mr. Howe and the officers' arrival at his house to try to find a legal alternative to holding on to the gun.

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Jerome A. Holmes
Circuit Judge