

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-20-2008

# USA v. Alston

Precedential or Non-Precedential: Precedential

Docket No. 06-1559

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Alston" (2008). *2008 Decisions.* Paper 1091.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1091

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-1559

UNITED STATES OF AMERICA

v.

ROBERT ALSTON,
                    Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 03-cr-0179
(Honorable Legrome D. Davis)

Argued January 28, 2008
Before:  SCIRICA, *Chief Judge*,
RENDELL, *Circuit Judge*, and THOMPSON, *District Judge*[*]

*The Honorable Anne E. Thompson, United States District
Judge for the District of New Jersey, sitting by designation.

(Filed: May 20, 2008)

MARK D. MUNGELLO, ESQUIRE (ARGUED)
Two Penn Center, Suite 200
Philadelphia, Pennsylvania 19102
        Attorney for Appellant

ERIC B. HENSON, ESQUIRE (ARGUED)
JOSEPH A. LaBAR, ESQUIRE
ROBERT A. ZAUZMER, ESQUIRE
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106
        Attorneys for Appellee

---

## OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

Robert Alston entered a conditional plea of guilty to possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1), and was sentenced to the mandatory minimum sentence of 15 years incarceration, *id.* § 924(e). On appeal, he contends the District Court erred by precluding him from presenting evidence in support of a justification defense had he

2

gone to trial.[1]  We will affirm.

## I.

Alston admitted to possessing a firearm but he claimed it was necessary for self-defense.  The uncontested facts are these.  Alston was arrested on September 30, 2002, at approximately 10 p.m., as a result of coordinated police efforts involving police helicopter surveillance responding to a report of gunshots in the area of 19th and Tasker Streets in Philadelphia, Pennsylvania. When arrested, Alston was wearing a bulletproof vest.  Officers recovered a .32 caliber revolver in a nearby alley where Alston had thrown it a minute earlier. Alston told an arresting officer the gun was his and the gun and vest were necessary for self-defense.  Alston was fearful because earlier that day he had seen a man who shot him one year earlier in 2001.

Alston was charged with possession of a firearm by a convicted felon. 18 U.S.C. § 922(g)(1).  Before this incident, Alston had been convicted of two violent felony offenses and one serious drug offense as defined in 18 U.S.C. § 924(e)(2)(A)–(B).

The Government filed a motion *in limine* to preclude Alston from presenting a justification defense at trial.  At the evidentiary hearing, Alston testified that in June 2001, he was robbed and shot five times at 45th and Sansom Streets in

---

[1]We have jurisdiction under 28 U.S.C. § 1291.

Philadelphia. After returning home from the hospital, Philadelphia police officers asked him to prosecute. On the basis of Alston's identification, two men were arrested and tried. Alston testified against the men at the preliminary hearing and at trial, having received police assurances of protection. The two defendants were acquitted of all charges.

After the acquittal, various people told Alston "to watch [his] back because they heard [the defendants were] out looking for [him], to get revenge from [him] getting them arrested." Nevertheless, Alston did not change his address and eventually returned to work after recovering from his injuries.

On the day he was arrested, September 30, 2002, around 4:45 p.m., Alston was transporting his daughter home on his mountain bike and rode past Louis Bentley, one of the acquitted suspects against whom he had testified. According to Alston: "I was riding past with my daughter but [Bentley] was talking to somebody and I heard him, he said he's gonna get me, he said that's the dude that got me arrested in 2001, he said he was gonna get me." Alston immediately took his daughter home then secured a revolver from his mother's house, in order, he said, to protect himself from Bentley. Alston left his mother's house on his bicycle, carrying the gun and wearing a bulletproof vest.[2] As noted, Alston was arrested around 10 p.m. that same

_____

[2]Alston had been carrying the gun once or twice a week for one to two months prior to his arrest, especially if he knew he was going to an area where he might encounter one of the

4

night.

At the evidentiary hearing, the District Court granted the Government's motion *in limine* to preclude Alston from offering a justification defense. Alston entered a conditional guilty plea and timely appealed.

II.

18 U.S.C. § 922(g) does not provide for a justification defense. Although the Supreme Court has questioned "whether federal courts ever have authority to recognize a necessity defense not provided by statute," *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 490 (2001),[3] several

---

acquitted men. He had been continuously wearing the bulletproof vest for a month prior to his arrest because of prior warnings regarding Bentley.

[3]The defenses of duress, necessity, and justification have generally all been analyzed in terms of justification. *See United States v. Paolello*, 951 F.2d 537, 540 (3d Cir. 1991) ("While the defenses of justification and duress were at one time distinct . . . '[m]odern cases have tended to blur the distinction between duress and necessity.'" (quoting *United States v. Bailey*, 444 U.S. 394, 410 (1980)); *see also United States v. Leahy*, 473 F.3d 401, 406 (1st Cir. 2007); *United States v. Salgado-Ocampo,* 159 F.3d 322, 327 n.6 (7th Cir. 1998); *United States v. Stover*, 822 F.2d 48, 49–50 (8th Cir. 1987); *United States v. Gomez*, 92 F.3d

courts of appeals, including our own, have recognized that justification is a valid defense to a felon-in-possession charge under 18 U.S.C. 922(g).[4] *See generally Paolello*, 951 F.2d at

770, 774 (9th Cir. 1996)*; United States v. Butler*, 485 F.3d 569, 572 n.1 (10th Cir. 2007). The Sixth Circuit found the terms are not interchangeable, but still used the "broader term of justification in discussing [defendant's] proferred defense in an attempt to avoid confusion." *United States v. Newcomb*, 6 F.3d 1129, 1133 (6th Cir. 1993). We agree with other circuits that "ease in administration favors treating [the common law defenses of duress, necessity, and self-defense], in a federal felon-in-possession case, under a single, unitary rubric: justification." *Leahy*, 473 F.3d at 406.

[4]All of our sister circuits that have reached the issue have recognized a justification defense under 922(g). *See, e.g., United States v. Mooney*, 497 F.3d 397, 404 (4th Cir. 2007); *United States v. Panter*, 688 F.2d 268, 269–72 (5th Cir. 1982) (found a justification defense exists under predecessor statute to 18 U.S.C. § 922); *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir.), *cert. denied*, 498 U.S. 872 (1990); *United States v. Perez*, 86 F.3d 735, 737 (7th Cir. 1996); *United States v. Lemon*, 824 F.2d 763, 764 (9th Cir. 1987); *United States v. Vigil*, 743 F.2d 751, 755 (10th Cir. 1984); *United States v. Deleveaux*, 205 F.3d 1292, 1297 (11th Cir. 2000); *United States v. Mason*, 233 F.3d 619, 623 (D.C. Cir. 2000).

The First, Second, and Eighth Circuits have chosen not

540–43; *United States v. Dodd*, 225 F.3d 340 (3d Cir. 2000).

In *Paolello*, we carefully traced the history of the justification defense, finding it "available under this statute." 951 F.2d at 541. Nevertheless we followed other courts finding the justification defense should be construed narrowly.[5] *See id*.

to rule on the validity of a justification defense until they are faced with evidence sufficient to support the requested defense. *See United States v. Holliday*, 457 F.3d 121, 128 (1st Cir. 2006) ("We too will simply assume arguendo that Congress intended to allow the defenses of necessity, duress, and self defense in a section 922 prosecution."); *United States v. Williams*, 389 F.3d 402, 404–05 (2d Cir. 2004) ("Although the language of 18 U.S.C. 922(g)(1) does not provide for a necessity defense, we will assume, without deciding, that persons charged with violating 18 U.S.C. 922(g)(1) may assert such a defense."); *United States v. Poe*, 442 F.3d 1101, 1104 (8th Cir. 2006) ("[W]e conclude that we need not reach the issue of whether justification is available as a defense to a violation of § 922(g) because Poe cannot satisfy the necessary elements.").

[5]The defense is rarely granted. *See United States v. Perrin*, 45 F.3d 869, 874 (4th Cir. 1995) ("It has only been on the rarest of occasions that our sister circuits have found defendants to be in the type of imminent danger that would warrant the application of a justification defense."); *see also Perez*, 86 F.3d at 737 ("[O]nly in the most extraordinary circumstances . . . will

at 542 ("The restrictive approach is sound. Congress wrote section 922(g) in absolute terms, banning any possession of firearms by all convicted felons."). The defendant has the burden of proving this affirmative defense by a preponderance of the evidence. *Dodd*, 225 F.3d at 342.

In *Paolello*, we incorporated a test for justification that had been adopted by other courts of appeals:

> (1) he was under unlawful and present threat of death or serious bodily injury;
> (2) he did not recklessly[6] place himself in a

---

th[is] defense entitle the [person prohibited from possessing a weapon] to arm himself in advance of a crisis merely because he fears, however sincerely and reasonably, that he is in serious danger of deadly harm.").

[6]Although our sister circuits have adopted what is essentially the same test, some circuits have found this element also extends to negligent conduct. *See United States v. Dixon*, 413 F.3d 520, 523 (5th Cir. 2005); *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir), *cert. denied*, 498 U.S. 872 (1990); *United States v. Vigil*, 743 F.2d 751, 755 (10th Cir. 1984); *United States v. Deleveaux*, 205 F.3d 1292, 1297 (11th Cir. 2000); *see also United States v. Poe*, 442 F.3d 1101, 1103 (8th Cir. 2006) ("Although the Eighth Circuit has never recognized justification as a defense to a violation of § 922(g) . . . we have indicated that if such a defense were available, we would follow the Fifth

8

situation where he would be forced to engage in criminal conduct;

(3) he had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and

(4) there is a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*Paolello*, 951 F.2d at 540 (footnote added). The District Court found Bentley's statement could reasonably be perceived to be a threat, but occurring four to five hours before Alston's arrest, it was not a present threat. The Court also found Alston failed to exhaust his legal alternative – contacting the police.

Crediting his testimony, it is difficult to second guess or to ignore Alston's fear of Bentley, one of the persons who robbed and shot him five times, and against whom he pressed

---

Circuit's articulation of the elements of the defense."(citations omitted)).

Other circuits have adopted our approach, which requires reckless conduct. *See United States v. Mooney*, 497 F.3d 397, 404 (4th Cir. 2007); *United States v. Salgado-Ocampo*, 159 F.3d 322, 326 (7th Cir. 1998); *United States v. Lemon*, 824 F.2d 763, 764 (9th Cir. 1987); *United States v. Mason*, 233 F.3d 619, 623 (D.C. Cir. 2000); *see also United States v. Leahy*, 473 F.3d 401, 409 n.8 (1st Cir. 2007) (noting the division among circuits but choosing not to reach a conclusion).

charges that eventually resulted in an acquittal, and who apparently lived in sufficient proximity that total avoidance was impossible or at least unlikely. It may be argued that Alston should have pulled up stakes and moved to a location where he would be unlikely to encounter Bentley. But economic or family circumstances may foreclose such an option. In any event, a victim should not have to relocate because of fear of possible retaliation. And so, crediting his testimony, we cannot find Alston had an unreasonable fear of retaliation from Bentley, perhaps even deadly retaliation. Nor would it appear that riding his bicycle in his neighborhood was reckless action although we see no evidence that would "force[] [him] to engage in criminal conduct." *Id*.

Although Alston may have been under an unlawful threat of death or serious bodily injury, it is clear that at the time he was arrested, there was no evidence that Alston was under a present threat, that is, it was not an imminent threat.[7]

---

[7]Only in rare circumstances will anything but an "immediate emergency" constitute a present threat. *United States v. Bell*, 214 F.3d 1299, 1301 (11th Cir. 2000); *see also Paolello,* 951 F.2d at 541 ("[A]n interdicted person may possess the firearm no longer than absolutely necessary." (citations omitted)); *Perez*, 86 F.3d at 737 (finding a justification defense "will rarely lie in a felon-in-possession case unless the ex-felon, not being engaged in criminal activity, does nothing more than grab a gun with which he or another is being threatened . . ."); *United States*

10

Furthermore, there was no direct causal relationship between the criminal action (possession of a firearm) and avoidance of the threatened harm (retaliation by Bentley). The causal relationship in these circumstances is attenuated at best. The avoidance of the threatened harm lacks the requisite imminence. To hold otherwise would immunize a convicted felon from prosecution for carrying a firearm solely based on a legitimate fear for life or limb. Someone in Alston's circumstances must show more than a legitimate fear of life and limb, as possession of a firearm by a convicted felon in the hope of deterring an assault is unlawful. Congress has not allowed it, and courts have only allowed the defense where the immediacy and specificity of the threat is compelling, and other conditions are met.[8] *See, e.g.*, *Paolello*, 951 F.2d at 539; *Newcomb*, 6 F.3d at

*v. Mahalick*, 498 F.3d 475, 479 (7th Cir. 2007) ("In practice, the defense has only applied to the individual who in the heat of a dangerous moment disarms someone else, thereby possessing a gun briefly in order to prevent injury to himself . . . , or to another." (citations omitted)).

[8]As noted, the entire test specifies:

> (1) he was under unlawful and present threat of death or serious bodily injury;
>
> (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;
>
> (3) he had no reasonable legal alternative (to both

11

1135–36, 38 (defendant briefly possessed shotgun and shells after disarming a dangerous person); *Panter*, 688 F.2d at 269–72 (defendant, while pinned to the floor after being stabbed in the stomach, reached for a club but instead grabbed a gun). Other cases have rejected the defense where the threat is diminished. *See*, *e.g.*, *United States v. Parker*, 566 F.2d 1304, 1305–06 (5th Cir. 1978) (defendant retained possession of a gun for thirty minutes after being attacked in his home)*; United States v. Wofford*, 122 F.3d 787, 790–91 (9th Cir. 1997) (most recent specific threat had occurred five months before possession of gun); *Perrin*, 45 F.3d at 875 (last threat came two days prior to possession of gun); *Holliday*, 457 F.3d at 128 (defendant wrestled firearm out of a police officer's hands but failed to "renounc[e] the gun as soon as any danger to his life had passed").

Alston faced no immediate danger. Bentley was speaking to a third party when he said he was going to "get" Alston, and Alston was able to safely ride away. Alston obtained the firearm from his mother's house based on a generalized threat of future danger. The immediacy of the threat

<hr />

       the criminal act and the avoidance of the threatened harm); and
       (4) there is a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*Paolello*, 951 F.2d at 540.

is also undermined by Alston's actions in the months prior to his arrest. Alston testified that he would often carry the same firearm whenever he went to an area where Bentley or the other acquitted suspect might frequent. His possession of the firearm on the night in question appears to be another instance of his reliance on the weapon when faced with the possibility of danger. "We must take care not to transform the narrow, non-statutory justification exception to the federal anti-felon law into something permitting a felon to possess a weapon for extended periods of time in reliance on some vague 'fear' of street violence." *Butler*, 485 F.3d at 575. The defendants who have been granted the defense faced split-second decisions where their lives, or the lives of others, were clearly at risk. Alston did not face such a situation.

Alston made no attempt to seek a legal alternative. Instead of contacting the police, Alston relied on his firearm as protection, not just on the night in question, but for over a month. "[A] defendant cannot claim justification as a defense for an illegal action that he chose to pursue in the face of other potentially effective, but legal options." *United States v. Lomax*, 87 F.3d 959, 962 (3d Cir. 1996) (citation omitted); *see also Singleton*, 902 F.2d at 473 ("[T]he keystone of the analysis is that the defendant must have no alternative–either before or during the event–to avoid violating the law." (citations omitted)).

Alston cites two cases in support. The first, *Paolello*, is an example of an "immediate emergency." *Bell*, 214 F.3d at

13

1301. In *Paolello*, where we allowed a justification defense, Paolello was followed out of a bar by a customer who demanded Paolello buy him a drink. 951 F.2d at 539. The customer struck one of Paolello's friends, then shot a gun in the air. Paolello grabbed the man's hand because he believed the attacker was aiming the gun at his friend. Paolello and the attacker struggled for the gun, but Paolello seized it and ran. The police apprehended him as he ran away. *Id*. *Paolello* mirrors the "immediate emergencies" that other courts have found constituted a present threat. None existed here.

Alston also cites *United States v. Gomez*, 92 F.3d 770 (9th Cir. 1996), but the unique facts in that case are distinguishable. A major drug dealer offered Gomez his choice of money or heroin to kill a number of people after learning Gomez would soon be released from prison. *Id*. at 772. Gomez reported this solicitation to the authorities, who told Gomez to accept the offer in order to assist with the investigation. *Id*. After Gomez obtained more information and relayed it to federal agents, the Government indicted the drug dealer, but revealed Gomez's name in the indictment, despite having promised to keep his identity secret. *Id*. at 773. Gomez received death threats and learned there was a contract out for his life. He sought help from federal agents, the county sheriff, his parole officer, local churches, even telling his story to the media, but no help was forthcoming. *Id*. To stay in hiding, Gomez jumped from one house to another, even sleeping in parks and riding buses for hours. *Id*. He lied to his parole officer, claiming he

14

took illegal drugs, which led to another incarceration, where he received a written death threat from an inmate. *Id*. Upon release, he received another death threat. *Id*. That same day, he obtained a gun to protect himself. *Id*. Two days later federal agents served him with a subpoena and found him with the gun. *Id*. at 773–74. After trial, the Ninth Circuit reversed the district court for failing to instruct the jury on justification. It explained the drug dealer was unlikely to "cool off and lose interest" in the defendant, as he had "amply demonstrated his willingness to kill to avoid conviction." *Id*. at 776. Other courts have distinguished *Gomez* because of its unique facts:

> [O]nly in the most extraordinary circumstances, illustrated by *United v. Gomez* . . . , where the defendant had sought protection from the authorities without success, will the defense entitle the ex-felon to arm himself in advance of the crisis merely because he fears, however sincerely and reasonably, that he is in serious danger of deadly harm.

*Perez*, 86 F.3d at 737, *quoted in Wofford*, 122 F.3d at 791 and *Bell*, 214 F.3d at 1312.

Alston did not face such extraordinary circumstances. Alston has not presented evidence that he was under a present threat of death or bodily harm, that there was a direct causal relationship between the criminal act and the avoidance of the threatened harm, or that he had no reasonable legal alternative.

15

### III.

Accordingly, we will affirm the judgment of conviction and sentence.