**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 18-3024 & 18-3186

_____

UNITED STATES OF AMERICA,

v.

NATHANIEL THOMAS,

Appellant

On Appeal from the District Court
of the Virgin Islands
(District Court Nos.: 1-18-cr-00005-001 and 1-08-cr-00020-002)
District Judge: Honorable Wilma A. Lewis

Argued on April 8, 2019

Before: SMITH, Chief Judge, JORDAN and RENDELL, Circuit Judges

O P I N I O N

Alphonso G. Andrews, Jr. **(Argued)**
Office of United States Attorney
1108 King Street
Suite 201
Christiansted, VI 00820

*Counsel for Appellee*

Gordon C. Rhea **(Argued)**
Richardson Patrick Westbrook & Brickman
1037 Chuck Dawley Boulevard
Building A
Mount Pleasant, SC 29464

Michael A. Rogers **(Argued)**
Office of the Federal Public Defender
4094 Diamond Ruby, Suite 5
Christiansted, VI 00820

Omodare B. Jupiter
Office of the Federal Public Defender
200 South Lamar Street
Suite 200-N
Jackson, MS 39201

*Counsel for Appellant*

**RENDELL**, Circuit Judge:

While on supervised release, Nathaniel Thomas was convicted of, among other things, knowingly possessing a firearm in violation of both federal and Virgin Islands law. The District Court sentenced Thomas for his most recent convictions and for violating the terms of his supervised release, and ordered that the latter sentence was to run consecutive to the former. On appeal, Thomas argues that his firearms convictions are not supported by the evidence and that the District Court erred by ordering his violation of supervised release sentence to run consecutively to his sentence for the underlying convictions. For the reasons set forth below, we will affirm.

I.[1]

Thomas had been convicted of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a), manufacture of marijuana in violation of 21 U.S.C. § 841(a)(1), and maintaining a drug facility in violation of 19 V.I.C. § 608b. He was sentenced to a term of imprisonment, followed by a period of supervised release. After he had been released from prison but before his supervised release had ended, he was involved in a shootout at a gas station, and a grand jury indicted him for the following: (1) knowingly possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (2) knowingly possessing a firearm while not being authorized to do so during the commission of crimes of violence—namely, discharging a firearm in a public place not in self-defense and assault in the third degree as charged in the fourth and fifth counts—in violation of 14 V.I.C. § 2253(a); (3) reckless endangerment in violation of 14 V.I.C. § 625(a); (4) willfully discharging a firearm in a public place not in self-defense in violation of 23 V.I.C. § 479(a); and (5) assault with a deadly weapon with intent to injure another in violation of 14 V.I.C. § 297(2).

At trial, the Government's case consisted of video footage from the gas station security cameras, testimony of a gas station employee and police officers who responded to the scene or otherwise worked on the investigation, and stipulations that were read into

---

[1] Because we write for the parties, who are familiar with the facts and the procedural posture to date, we only include what is necessary to explain our decision.

the record.[2]  The defense presented witness testimony on the events leading up to and during the shooting, including testimony from Thomas himself.  On the night in question, Thomas was driving Kareem Mathis to a strip club to pick up a set of keys.  At some point during the drive, a silver Ford Explorer began aggressively tailing Thomas's vehicle.  The Explorer was unrelenting, so Thomas continued past the strip club to an adjacent gas station, where he pulled in and stopped his car.  The Explorer stopped behind him and then began backing up as Thomas exited his vehicle, and gunfire erupted.  Although the security camera footage does not establish who initiated the shooting, witnesses testified that someone in the Explorer was the first to fire and that Thomas did not have a gun when he exited his car.  Thomas took cover behind a cluster of parked cars, and witnesses testified that an individual named Raheem Charlery then handed Thomas a gun.  Thomas emerged from his place behind the parked cars and ran after the Explorer while firing the weapon that Charlery gave him.  Once the Explorer had exited the gas station parking lot, Thomas stopped chasing after it.  Thomas went back to his car, and, according to witness testimony, he immediately returned the gun to Charlery.

At Thomas's request, the District Court gave the jury an instruction on the defense of justification.  Nonetheless, the jury found Thomas guilty of the first three counts, knowing possession of a firearm in violation of federal and Virgin Islands law, and reckless endangerment.  Although it did not find him guilty of the fourth and fifth

---

[2] Two of the three stipulations provided that Thomas was not authorized to carry a firearm at the time of the events in question and that Thomas had a prior felony conviction for possession of marijuana with intent to distribute.

4

counts,[3] the jury nonetheless found that he possessed a firearm in violation of Virgin Islands law "during the commission of crimes of violence, that is, discharging a firearm and assault third degree [sic], as charged in Counts 4 and 5." SA 1B.[4] The District Court sentenced him to a prison term of ninety-six months on Count One, fifteen years on Count Two, and five years on Count Three. The Court ordered that the terms of imprisonment for Counts Two and Three run concurrently with each other and run consecutively to the term of imprisonment for Count One.

In a separate hearing, the District Court found that, based on these convictions, Thomas had violated the terms of the supervised release he was serving pursuant to his earlier drug-related convictions. The Court then sentenced Thomas to twelve months' and one day's imprisonment for this violation. Although Thomas's counsel argued that the Court should run the sentence for the violation of supervised release concurrently with the sentences in the underlying matter, the District Court found it "appropriate to impose [the] sentence [for Thomas's violation of supervised release] consecutively." App. 161–62. In making this decision, the Court stated the following:

> . . . The Court does not agree that simply because [the sentence for the underlying criminal activity] is a sentence [Thomas's counsel] believe[s] was maybe more than enough or, indeed, at least sufficient that this is grounds not to run the sentences consecutively for an offense that this Court views

---

[3] The jury did not reach a verdict on the fourth count, discharging a firearm in a public place not in self-defense, and it acquitted him on the final count, assault with a deadly weapon.

[4] Because this is a consolidated appeal, each case has its own set of appendices. For convenience, we cite to the Appendix in 18-3024 using the convention "A __," the Supplemental Appendix in 18-3024 using "SA __," and the Appendix in 18-3186 using "AA __."

as a separate offense, a violation of the Court's order with regard to supervised release.

I think it is important . . . that individuals know and recognize that the Court['s] orders are to be followed and that it is, indeed, a violation subject to sanction for a violation of those conditions set by the Court. And this is one such case.

The Court also takes note of the fact . . . that the recommendation [in the guidelines] is that those sentences for violations of supervised release be consecutive to the sentence for the underlying crime.

So, the Court rejects the rationale that has been advanced with regard to either the length of the underlying sentence as a basis or as the basis for coming to a different conclusion in this matter.

AA 162–63. Thomas timely appealed from both his firearms-related convictions and the sentence imposed for his violation of the terms of his supervised release.

## II.[5]

On appeal, Thomas challenges the sufficiency of the evidence supporting his convictions for knowingly possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and knowingly possessing a firearm while not being authorized to do so during the commission of crimes of violence in violation of 14 V.I.C. § 2253(a). He also challenges the District Court's order imposing the sentence for his supervised release violation to run consecutively with his sentences for the underlying crimes.

## A.[6]

---

[5] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and 48 U.S.C. § 1612. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).
[6] When reviewing a conviction for sufficiency of the evidence, "[w]e must sustain the jury's verdict 'if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision.'" *United States v. Caraballo-Rodriguez*, 726

With regard to the sufficiency of the evidence supporting his underlying convictions, Thomas argues that he proved by a preponderance of the evidence that he was entitled to the defense of justification by necessity by establishing all of the elements of that defense.  He claims that the burden then shifted to the Government to disprove the defense beyond a reasonable doubt, and, because the Government did not do so, Thomas's convictions for the first and second counts must be dismissed.  We disagree.

A justification defense is available if the evidence shows that a jury could reasonably conclude each of the following:

> (1) that the defendant was under an unlawful and present threat of death or serious bodily injury; (2) that he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that he had no reasonable legal alternative to both the criminal act and the avoidance of the threatened harm; and (4) that there was a direct causal relationship between the criminal act and the avoidance of the threatened harm.

*Gov't of Virgin Islands v. Lewis*, 620 F.3d 359, 365 (3d Cir. 2010) (citing *United States v. Paolello*, 951 F.2d 537, 540–41 (3d Cir. 1991)).  The defense is "construed narrowly," *United States v. Alston*, 526 F.3d 91, 94 (3d Cir. 2008), and the defendant is required "to

F.3d 418, 430 (3d Cir. 2013) (en banc) (quoting *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003)).  This standard is "particularly deferential," *United States v. Gonzalez*, 905 F.3d 165, 179 (3d Cir. 2018) (citation and internal quotation marks omitted), and "the verdict must be upheld as long as it does not 'fall below the threshold of bare rationality.'" *Caraballo-Rodriguez*, 726 F.3d at 431 (quoting *Coleman v. Johnson*, 566 U.S. 650, 656 (2012)).  Moreover, we "do not reweigh the evidence or assess witness credibility." *United States v. McKee*, 506 F.3d 225, 232 (3d Cir. 2007) (citation omitted).

7

meet a high level of proof to establish the defense," *Lewis*, 620 F.3d at 365 (quoting

*Paolello*, 951 F.2d at 542). Here, the jury was properly instructed regarding this defense.

As a threshold matter, we note that Thomas's argument rests on an incorrect

understanding of the law. Although he correctly states that he bore the burden of

establishing each element of the justification defense by a preponderance of the evidence,

*see United States v. Dodd*, 225 F.3d 340, 350 (3d Cir. 2000) (adopting "a rule that places

the burden of persuasion on the defendant with regard to a justification defense to a

felon-in-possession charge"), the law does not provide for a burden shift that would

require the government to disprove the elements of the defense beyond a reasonable

doubt once the defense had established them by a preponderance of the evidence.[7]

Moreover, Thomas never made this argument in the District Court, nor did he object to

the Court's charge, which instructed the jury that Thomas was required to prove the

---

[7]     Thomas cites to a number of cases for the proposition that a burden shift exists.
First, he cites to *Paolello*, where the parties agreed that the defendant would have the
burden of production on the justification defense and, if he satisfied that burden, the
government would then be required to disprove the defense beyond a reasonable doubt.
*Paolello*, 951 F.2d at 544. Because the issue was not properly before us in that case, we
did not pass upon it, *id.*, and the parties' agreement there has no bearing on the burden
here. The other three circuit court cases to which Thomas cites hold only that the burden
is on the defendant to prove the justification defense by a preponderance of the evidence
and do not even remotely suggest that the burden shifts to the government to disprove the
defense by beyond a reasonable doubt. *See Lewis*, 620 F.3d at 364 n.5 (concluding that
"the burden rested with [the defendant] to establish his eligibility for the instruction by a
preponderance of the evidence"); *Dodd*, 225 F.3d at 350; *United States v. Deleveaux*, 205
F.3d 1292, 1294 (11th Cir. 2000) (holding that the defendant is required to prove
justification by a preponderance of the evidence). In fact, in *Dodd*, we explicitly rejected
the argument that we should adopt the same burden allocation for justification as we have
for entrapment, i.e., that the government should have the burden of proving beyond a
reasonable doubt that the defense does not apply. *See* 225 F.3d at 349–50.

elements of the defense by a preponderance of the evidence. Therefore, this argument was waived.

To the extent that Thomas argues that his convictions must be vacated because he established all four elements of the defense of justification by necessity, we conclude that a rational trier of fact could have found that Thomas failed to establish at least three of those elements. The first element requires that the defendant be "under an unlawful and present threat of death or serious bodily injury." *Lewis*, 620 F.3d at 365 (citing *Paolello*, 951 F.2d at 540–41). In *Alston*, we defined "present threat" and explained that "[o]nly in rare circumstances will anything but an 'immediate emergency' constitute a present threat." 526 F.3d at 95 n.7; *see also id.* at 95–96 (equating the requirement that the threat be "present" to a requirement that it be "imminent" and providing examples from other circuits of situations in which the immediacy requirement is met). Because the evidence established that Thomas came into possession of the firearm when he was safely hidden between parked cars and while the Explorer was backing away from him, a jury could have reasonably concluded that the threat was not "present."

A rational trier of fact could also conclude that Thomas failed to satisfy the second element, "that he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct." *Lewis*, 620 F.3d at 365 (citing *Paolello*, 951 F.2d at 540–41). In doing so, the jury may have credited the gas station's surveillance footage, which clearly shows Thomas running toward, and firing at, the Explorer.

Finally, the jury could have rationally concluded that Thomas failed to show the third element, that he had no reasonable legal alternative to both the criminal act and the

9

avoidance of the threatened harm.  Thomas was not harmed while hiding behind the group of parked cars, and the Explorer appeared to be retreating before he came into possession of the weapon.  Therefore, the jury could have determined that Thomas *did* have a legal alternative to possessing the weapon, namely, remaining hidden behind the cars.  Because the jury could have reasonably concluded that Thomas failed to establish any one of three of the elements of the justification defense, we will affirm Thomas's convictions on the first and second counts.

B.[8]

Next, Thomas argues that the District Court erred by ordering his sentence for the violation of his supervised release to run consecutively to his sentence for the underlying convictions.  Specifically, he contends that (1) U.S. Sentencing Guidelines Manual § 5G1.3(d) requires the District Court to consider the length of a prior undischarged sentence in determining whether the sentence for a violation of supervised release should run concurrently or consecutively, (2) the District Court improperly concluded that it could not consider that length in making its decision, and (3) the Court improperly concluded that a sentence for a violation of supervised release must always run consecutively to the sentence imposed for the underlying conviction.  We disagree with his characterization of the guidelines and of the District Court's reasoning.

---

[8] We typically review the imposition of a particular sentence concurrently or consecutively for abuse of discretion.  *United States v. Swan*, 275 F.3d 272, 275 (3d Cir. 2002).  However, because Thomas challenges the construction of the Sentencing Guidelines, our review is plenary.  *Id.* (citation omitted).

U.S.S.G. § 5G1.3(d), which applies in cases in which a defendant has had his or her supervised release revoked based on the criminal conviction, provides:

> [T]he sentence for the instant offense[, i.e., the criminal conviction that constitutes the supervised release violation,] may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment[, i.e., the sentence imposed for the revocation,] to achieve a reasonable punishment for the instant offense.

The commentary to § 5G1.3(d) states that, in deciding whether to impose a consecutive sentence, "the court *should* consider," among other factors, "[t]he type … and length of the prior undischarged sentence[.]" U.S.S.G. § 5G1.3(d) cmt. 4(A)(ii) (emphasis added). This language is explicitly permissive, and nothing else in either § 5G1.3(d) or its commentary mandated that the District Court consider the length of Thomas's sentence for his underlying convictions in deciding whether the sentence of his violation of supervised release would run consecutively to that sentence. Moreover, the commentary specifically "recommends that the sentence for the instant offense be imposed *consecutively* to the sentence imposed for the revocation," U.S.S.G. § 5G1.3(d) cmt. 4(C) (emphasis added), which is exactly what the District Court did here, *see* AA 163 (noting this recommendation).

The District Court did not conclude that it could not consider the length of the sentence for the underlying convictions when determining whether to impose the sentence for his violation of supervised release consecutively or concurrently. Instead, it merely did not agree with Thomas's counsel that the length of the undischarged sentence was controlling and warranted a concurrent sentence. The Court expressed its view that

11

the "important" consideration was that "individuals know and recognize that the Court['s] orders are to be followed." AA 162.

Finally, contrary to Thomas's assertion, the District Court did not conclude that a sentence for a violation of a term of supervised release could never run concurrently with the sentence for the underlying conviction. Instead, the District Court expressly cabined its reasoning to this particular case when it stated that "this is one such case" in which consecutive sentences are appropriate. AA 163. Accordingly, we will affirm the sentence imposed for his violation of the terms of his supervised release.[9]

### III.

---

[9]     Prior to oral argument, we asked that counsel be prepared to address whether the District Court should have considered U.S.S.G. § 5G1.3 in deciding whether to run Thomas's sentence on his federal conviction (Count One) concurrently or consecutively with his local convictions (Counts Two and Three) and whether its failure to do so amounts to plain error. We also asked for supplemental briefing on that issue and the applicability of *United States v. Simmonds*, 235 F.3d 826 (3d Cir. 2000), following argument. In *Simmonds*, we noted that if Simmonds had committed his offenses in a state and not the territory of the Virgin Islands, he would have been sentenced on his federal and state offenses separately in federal and state court, and the federal court would have referred to § 5G1.3. *Id.* at 835 n.7. We noted, however, that "[i]t is only because uniquely in the Virgin Islands a defendant can be convicted of both the federal and the territorial offenses at the same time in federal court that the application of § 5G1.3 in such a situation is even debatable." *Id.* But regardless of whether § 5G1.3 applies in cases in which a defendant is sentenced for federal and local convictions at the same time, we conclude that the District Court's failure to consider that provision was not plain error.

"An error is plain if it is clear or obvious, affects substantial rights, and affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Flores-Mejia*, 759 F.3d 253, 259 (3d Cir. 2014) (en banc) (citation and internal quotation marks omitted). By its terms, § 5G1.3 governs the "Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment." As the applicability of § 5G1.3 in this context, where there was no undischarged term of imprisonment, is "debatable," *Simmonds*, 235 F.3d at 835 n.7, and not clear or obvious, the Court did not plainly err in not referring to it.

For the foregoing reasons, we will affirm the District Court's judgment in Appeal No. 18-3024 and the sentence imposed for Thomas's violation of the terms of his supervised release in Appeal No. 18-3186.