**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1109
_____

UNITED STATES OF AMERICA

v.

JOHN PERKINS,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:19-cr-00269-007)
U.S. District Judge: Honorable Mitchell S. Goldberg
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 13, 2025
_____

Before: SHWARTZ, KRAUSE, and CHUNG, Circuit Judges.

(Filed: April 4, 2025)
_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

John Perkins raises several challenges to his conviction for conspiracy to commit kidnapping and kidnapping. Because none have merit, we will affirm.

I

A

Salvador Sanchez-Guerrero and his son, Enoch Sanchez, solicited Robert Favors, a co-worker of Sanchez's, to help kidnap Alejandro Ramon, who had stolen drugs from Sanchez-Guerrero's associates. Favors recruited his cousin, Perkins, to help.

Favors and Perkins attended a meeting with Sanchez-Guerrero, Sanchez, and three others: Ivan Prieto, Jose Bernal, and Jose Castillo. At the meeting, Prieto told Favors and Perkins that they were "looking for [Ramon] because he owed [them] some money," and "wanted to kidnap" him to secure payment. Supp. App. 191-92.[1] Favors indicated interest in helping and, in exchange, Prieto would supply Favors and Perkins with drugs.[2] Favors and Perkins were to act as the "muscle," who would "intervene" if needed while the others collected the money. Supp. App. 405.

Ten days later, Prieto and Castillo used a ruse to lure Ramon to a house. Prieto told Favors he was "ready for" him, which Favors understood to mean that Prieto was

---

[1] Prieto testified that he used the Spanish word translated as "catch," not "kidnap" when speaking to Favors and Perkins, Supp. App. 265, but testified that the concept of kidnapping is captured by that Spanish word, Supp. App. 309-10. Bernal similarly testified that "[i]n Spanish we don't use that word[, 'kidnapping']. We use a different word. We don't use kidnapping as such. But in English there is no other word for kidnapping except that." Supp. App. 870.

[2] Testimony also suggests that Favors and Perkins would be paid $5,000.

ready for his and Perkins's "help . . . to recover their money" from Ramon. Supp. App. 408. Favors called Perkins and another cousin, Rasul Maven, and they met the rest of the group at a location Perkins selected. They then traveled together to the house.

Prieto, Castillo, and Ramon entered the house where they were later joined by Bernal, Sanchez-Guerrero, Maven, and another associate, Jose Delgado. Perkins and Favors remained in a car while the others beat, shot, pepper-sprayed, gagged, and bound Ramon.

Perkins and Favors were then summoned into the house, where Perkins helped load Ramon into the back of a vehicle parked in the garage. Bernal and Delgado then drove the vehicle with Ramon away, and they met Perkins, Favors, Castillo, Sanchez-Guerrero, and Maven at a gas station where Castillo and Sanchez-Guerrero entered the vehicle carrying Ramon.

Perkins, Favors, and Maven departed, and the others traveled with Ramon to a house in Chester County, Pennsylvania, where they made calls to Ramon's family demanding a ransom to recoup the money he owed. The group then drove Ramon to Maryland and killed him.

B

Perkins and seven co-defendants were charged with conspiracy to commit kidnapping in violation of 18 U.S.C. § 1201(c), and aiding and abetting kidnapping involving interstate commerce resulting in death in violation of 18 U.S.C. §§ 1201(a)(1) and 2. Perkins proceeded to trial and the jury found him guilty on all counts.

3

Perkins moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, which the District Court denied. As to the aiding and abetting kidnapping charge, the Court concluded that sufficient evidence supported Perkins's conviction because the Government demonstrated that:

> [(1)] Perkins knowingly agreed to help unlawfully hold the victim, and took an affirmative act in furtherance of the offense by helping load the victim into the trunk of [a vehicle; (2)] the victim was transported across state lines to Maryland, and that he died as a result of the kidnapping[; and (3) Perkins] . . . believed he would receive a benefit in the form of establishing a drug trafficking relationship with [one of his co-defendants].

App. 17.[3] As to the conspiracy charge, the Court concluded that a rational jury could find that Perkins knowingly agreed to commit kidnapping based on evidence that: (1) Perkins and his co-defendants discussed kidnapping Ramon to recover a debt; (2) Perkins understood he was to act as the "muscle" in case of violence and (3) his participation would provide him access to drugs. App. 20.

Perkins appeals.

## II[4]

Perkins challenges his convictions, arguing that the District Court erred by (1) denying his motion for a judgment of acquittal because the evidence was insufficient to convict him of either charge; (2) excluding two allegedly exculpatory letters from

---

[3] The Court also concluded that the evidence supported holding Perkins vicariously liable for his co-conspirator's actions under Pinkerton v. United States, 328 U.S. 640 (1946).

[4] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

evidence; (3) refusing to instruct the jury on a justification defense; and (4) failing to provide a curative instruction regarding certain arguably inadmissible testimony.  We address each in turn.

A[5]

Sufficient evidence supports Perkins's convictions on the kidnapping and conspiracy charges.

To sustain a conviction under the kidnapping statute, 18 U.S.C. § 1201(a)(1), the Government must prove "(1) the transportation in interstate commerce (2) of an unconsenting person who is (3) held for ransom or reward or otherwise, (4) such acts being done knowingly and willfully."[6]  United States v. Barton, 257 F.3d 433, 439 (5th Cir. 2001).

Perkins's claim that he did not commit kidnapping because he did not knowingly aid and abet holding the victim for ransom fails.  The kidnapping statute does not limit

---

[5] "We exercise plenary review over a district court's grant or denial of a motion for judgment of acquittal based on the sufficiency of the evidence."  United States v. Richardson, 658 F.3d 333, 337 (3d Cir. 2011) (internal quotation marks and citations omitted).  This standard of review is "particularly deferential."  United States v. Hendrickson, 949 F.3d 95, 97 n.2 (3d Cir. 2020) (internal quotation marks and citation omitted)).  We review the record "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt."  United States v. Caraballo-Rodriguez, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (internal quotation marks, alterations, and citations omitted).

[6] To prove aiding and abetting kidnapping under 18 U.S.C. § 2, the Government must prove the defendant took an affirmative act in furtherance of the kidnapping with the intent of facilitating its commission.  See Rosemond v. United States, 572 U.S. 65, 71 (2014).

liability to those who hold a victim for ransom. Rather, the statute's "phrase 'or otherwise' . . . include[s] any object of a kidnapping which the perpetrator might consider of sufficient benefit to himself to induce him to undertake it." United States v. Parker, 103 F.2d 857, 861 (3d Cir. 1939). The evidence shows that Perkins (1) discussed with his co-defendants that their purpose was to recover money that the victim owed, and that Perkins would be rewarded for his assistance with access to drugs, and (2) participated in the scheme by, among other things, loading the beaten Ramon into the vehicle destined for Maryland, to in furtherance of that goal. Based on this testimony, a rational juror could find beyond a reasonable doubt that Perkins knew or could reasonably foresee that Ramon was being held to recoup a drug debt.[7]

There is also sufficient evidence to uphold the kidnapping conspiracy conviction under 18 U.S.C. § 1201(c). To convict a defendant for this crime, the Government must prove "(1) the existence of an agreement to violate the law; (2) knowledge and intent to join the conspiracy; and (3) an overt act constituting actual participation in the conspiracy." United States v. Small, 988 F.3d 241, 252 (6th Cir. 2021) (internal quotation marks and citations omitted).

The evidence showed that Perkins was present when his co-conspirators discussed kidnapping Ramon to recover the drug debt and Perkins understood that he and Favors

---

[7] Because the evidence supports Perkins's conviction for kidnapping or aiding and abetting thereof, we need not address whether Perkins is liable under Pinkerton, 328 U.S. 640, which allows criminal defendants to be held liable for the acts of their co-conspirators under certain circumstances.

were to serve as the "muscle" in executing the plan, and that he, in fact, acted consistently with that plan in exchange for access to drugs. Supp. App. 405. Based on this evidence, a rational juror could convict him of conspiring to kidnap Ramon.

B[8]

Perkins contends that the District Court erred by excluding two letters[9] written by Favors as inadmissible hearsay because (1) the letters are not hearsay, and (2) even if they are hearsay, they are admissible under Federal Rule of Evidence 807. Both arguments fail.

1

Hearsay is an out of court statement offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay statements are generally inadmissible under Rule 802, but Rule 801(d) deems certain out-of-court statements nonhearsay and other Rules allow hearsay statements to be admitted in certain circumstances. See Fed. R. Evid. 803-804, 807.

---

[8] "We review the [D]istrict [C]ourt's evidentiary rulings principally on an abuse of discretion standard," but "exercise plenary review . . . to the extent [such rulings] are based on a legal interpretation of the Federal Rules of Evidence." United States v. Green, 617 F.3d 233, 239 (3d Cir. 2010).

[9] Favors testified for the Government. Supp. App. 390. Before trial, he wrote letters to Perkins stating, among other things, "I need for you to do what I say even though they know we don't have nothing to do with this," "I know you mad you in here, but you cool, because you don't have nothing to do with nothing," "I know you didn't have nothing to do with this, but you have to say the same story I tell you," and "I know you don't know about this whole situation, because all I told you is I was going to get drugs." Supp. App. 620-25.

7

Although Perkins was permitted to impeach Favors with statements contained in the letters he wrote, Perkins also sought to admit the letters for their truth. He contends that "[t]here is no hearsay problem" because the witness who wrote the letter testified at trial and "adopted [the] statements in the letters as his own . . . transform[ing] his prior statement[s] into his in-court trial testimony," and rendering them nonhearsay. Appellant's Br. 40. Although some courts and commentators have adopted this understanding of the hearsay rules,[10] we will not wade into this debate (and its tension with Rule 801(d)(1)'s text) because, even if a witness-declarant acknowledges his prior statements on the stand, the witness must also testify that the statement was true to be admissible for substantive purposes. United States v. Demmitt, 706 F.3d 665, 672 (5th Cir. 2013). Put differently, unless the witness testifies that his out-of-court statements were true, he has not adopted the statements as contemplated under Rule 801(d)(1) to render them admissible nonhearsay. See id.

Favors testified that he wrote the two letters but did not testify that the statements contained in them were true. Therefore, he did not adopt the statements for Rule 801's

---

[10] E.g., Amarin Plastics, Inc. v. Md. Cup Corp., 946 F.2d 147, 153 (1st Cir. 1991); BCCI Holdings (Lux.), Société Anonyme v. Khalil, 184 F.R.D. 3, 6 (D.D.C. 1999) (collecting cases); 5 Jack B. Weinstein, et al., Weinstein's Federal Evidence § 801.21(4) (2024); see also Fed. R. Evid. 801(d) advisory committee's note to proposed rules; 4 Stephen A. Saltzburg, et al., Federal Rules of Evidence Manual § 801.02(1)(d) (2024) ("Rule 801 includes prior statements of testifying witnesses within the definition of hearsay.").

purposes and the District Court correctly concluded that the statements in the letters were hearsay.  See id.[11]

2

The District Court also did not abuse its discretion in concluding that the residual exception to the hearsay rule did not render the statements admissible.  Fed. R. Evid. 807. Under Rule 807, "a court [may] admit an otherwise inadmissible hearsay statement if the statement 'is supported by sufficient guarantees of trustworthiness' and 'is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.'"  United States v. Nucera, 67 F.4th 146, 171 (3d Cir. 2023) (quoting Fed. R. Evid. 807(a)).  This hearsay exception is "to be used only rarely, and in exceptional circumstances and applies only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present."  United States v. Turner, 718 F.3d 226, 232 (3d Cir. 2013) (internal quotation marks, citations, and alterations omitted).

---

[11] To the extent Perkins attempts to rely on Rule 801(d)'s other nonhearsay categories, none are applicable.  Rule 801(d)(1) does not apply because the statements in these letters (1) were not given under penalty of perjury, (2) were not offered to rebut a charge of recent fabrication or improper influence, or otherwise rehabilitate the declarant's credibility, and (3) do not identify any previously perceived person.  Fed. R. Evid. 801(d)(1).  Rule 801(d)(2) admits as nonhearsay statements "offered against an opposing party," but Favors is not an opposing party and thus his statements are not admissible under this rule.  See e.g., United States v. Gossett, 877 F.2d 901, 906 (11th Cir. 1989) ("The testimony was not admissible under Rule 801(d)(2) because the admission sought to be introduced was made by a co-defendant who is not a party opponent.  The Government is the party opponent of both defendants.").  Accordingly, Rule 801(d) does not provide a basis to admit the letters as nonhearsay.

Such exceptional guarantees and circumstances are not present here as Favors's

letters to Perkins were undated, unsigned, unsworn, contained text that Favors disavowed

writing, and contradicted Favors's sworn testimony.  See United States v. Simmons, 70

F.4th 1086, 1089-90 (8th Cir. 2023) (holding a letter "not written under oath and

contradict[ing another witness's] sworn testimony" not sufficiently trustworthy); United

States v. Wright, 363 F.3d 237, 245-46 (3d Cir. 2004) (affirming exclusion of unsworn

protestations of innocence by criminal defendant to his attorney).[12]  As a result, the

District Court did not abuse its discretion in declining to admit these letters under Rule

807.[13]

## C[14]

The District Court also did not err by refusing to deliver a jury instruction on the

justification defense.  A district court must deliver a justification instruction if the

---

[12] Because we conclude that the District Court correctly found the letters inadmissible, we need not address whether Perkins met Rule 807(b)'s notice requirement. Fed. R. Evid. 807(b).

[13] Even if the District Court had erred in not allowing the statements to be admitted as substantive evidence, any such error would have been harmless considering (1) the jury's ability to see the letter and consider Favor's testimony about it in evaluating his credibility, and (2) the strength of the evidence against Perkins.  United States v. Dispoz-O-Plastics, Inc., 172 F.3d 275, 286 (3d Cir. 1999) (stating that an error is harmless if the court has a "sure conviction that the error did not prejudice the defendant") (internal quotation marks and citation omitted)).

[14] On a challenge to a district court's refusal to deliver a justification defense instruction, we "review the record to determine whether there was evidence presented to support the theory of justification and we . . . further make a plenary legal determination of whether justification could have been a defense to the indictment."  United States v. Paolello, 951 F.2d 537, 539 (3d Cir. 1991).

defendant lays "foundation in the evidence" for such a defense.  See United States v.

Sussman, 709 F.3d 155, 178 (3d Cir. 2013) (internal quotation marks and citation

omitted).  To establish a justification defense, a defendant must show:

> (1) he was under unlawful and present threat of death or serious bodily injury;
> (2) he did not recklessly place himself in a situation where he would be forced
> to engage in criminal conduct; (3) he had no reasonable legal alternative (to
> both the criminal act and the avoidance of the threatened harm); and (4) there
> is a direct causal relationship between the criminal action and the avoidance
> of the threatened harm.

United States v. Paolello, 951 F.2d 537, 540 (3d Cir. 1991).

The District Court properly declined to provide a justification defense instruction

because, among other things, Perkins deliberately placed himself in a situation to engage

in criminal conduct and thus cannot satisfy the second element of the defense.  He and

Favors agreed to provide "muscle" should their co-conspirators need assistance collecting

the debt, Supp. App. 405, and Perkins helped to load the victim's beaten body into a

vehicle.  His knowing and voluntary actions render him ineligible for the justification

defense and so the Court properly denied his request for a justification instruction.[15]

---

[15] Perkins cannot establish the first element of the defense, either.  Though the evidence shows that one or more co-conspirators had guns, and Favors testified that he and Perkins had concern for their lives, this "generalized" fear of "future danger" does not support a justification defense.  United States v. Alston, 526 F.3d 91, 96 (3d Cir. 2008).  Furthermore, the defense is reserved for "defendants who . . . faced split-second decisions where their lives, or the lives of others, were clearly at risk," id. at 97, and here Perkins had ten days to reconsider his participation in the scheme from the initial meeting at the restaurant and the day of the kidnapping.  For this additional reason, the District Court correctly refused to deliver the instruction.

11

### D[16]

The District Court also did not err by refusing to deliver a curative instruction with respect to certain testimony that Perkins argues was inadmissible.[17]

A district court abuses its discretion in refusing to deliver a proposed jury instruction only if, among other things, that instruction "is so important that its omission prejudiced the defendant." United States v. Piekarsky, 687 F.3d 134, 142 (3d Cir. 2012) (internal quotation marks and citations omitted). Here, the District Court refused to deliver a curative instruction with respect to the testimony[18] because such an instruction would exacerbate any prejudice to Perkins. Although "[w]e normally presume that a jury will follow an instruction to disregard inadmissible [testimony] inadvertently presented to it," Greer v. Miller, 483 U.S. 756, 766 n.8 (1987), sometimes curative instructions "overemphasize[]" inadmissible testimony and "creat[e] further prejudice," United States v. DeLucca, 630 F.2d 294, 299 (5th Cir. 1980). Based on our review of the record, which shows the stray nature of the testimony in the context of the considerable evidence of

---

[16] "We review the refusal to give a particular instruction . . . for abuse of discretion." United States v. Leahy, 445 F.3d 634, 642 (3d Cir. 2006), abrogated on other grounds by Loughrin v. United States, 573 U.S. 351 (2014).

[17] The conspirators discussed multiple ruses to lure the victim to the home where he was beaten. The testimony at issue pertains to Perkins's cross-examination of a detective about whether one of the Government's witnesses ever told him about a particular ruse that the group discussed. After repeatedly stating that the witness had not told the detective about the alternate ruse, the detective testified that someone else, who he did not name, had. Perkins argues that this testimony constituted inadmissible hearsay. Perkins did not object to the testimony when it was given but rather sought a curative instruction during the District Court's charge conference.

[18] We offer no opinion regarding the testimony's admissibility.

12

Perkins's guilt,[19] we cannot say that a curative instruction was "so important that its omission prejudiced the defendant." Piekarsky, 687 F.3d at 142. Thus, the District Court acted within its discretion in refusing to deliver the instruction.

III

For the foregoing reasons, we will affirm.

---

[19] See United States v. Zehrbach, 47 F.3d 1252, 1265 (3d Cir. 1995) (en banc) (explaining that, in the context of harmless error analysis, we "determine[] prejudice [by] consider[ing] the scope of the objectionable comments[,] their relationship to the entire proceeding, . . . and the strength of the evidence supporting the defendant's conviction").